**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| SVV TECHNOLOGY INNOVATIONS, INC., | § § | |
| *Plaintiff* | § | **CIVIL ACTION NO. 6:22-CV-639-ADA** |
| | § | **CIVIL ACTION NO. 6:22-CV-640-ADA** |
| -vs- | § | **CIVIL ACTION NO. 6:22-CV-641-ADA** |
| | § | |
| ACER INC., | § | |
| *Defendant* | § | |

## ORDER DENYING DEFENDANT ACER INC.'S CORRECTED MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

Before the Court is Defendant Acer Inc.'s ("Acer") Corrected Motion to Transfer Venue to the Northern District of California ("the Motion"). ECF No. 28.[1] Plaintiff SVV Technology Innovations Inc. ("SVVTI") opposes the motion. ECF No. 35. Acer filed its Reply to support its motion. ECF No. 39. After careful consideration of the parties' briefs and the applicable law, the Court **DENIES** Acer's Motion to Transfer Venue to the Northern District of California ("NDCA").

## I.    FACTUAL BACKGROUND

On June 21, 2022, Plaintiff SVVTI initiated three separate lawsuits against Acer in the Western District of Texas ("WDTX") in which SVVTI claims that MSI infringed a total of 13 patents by allegedly making, importing, offering to sell, selling, and/or having sold in the United States the numerous products expressly listed in the Complaints (the "Accused Products"). *See* ECF No. 1, ¶¶ 32–37, 39, 42, 46, 49, 54; *see also* Civil Case No. 6:22-cv-640, ECF No. 1, ¶¶ 32–37, 39, 42, 45, 48, 52, 54, 58; Civil Case No. 6:22-cv-641, ECF No. 1, ¶¶ 32–37, 39, 42, 45, 48, 53. Dr. Sergiy Vasylyev is identified as the sole named inventor and applicant listed on each of

---

[1] Defendant Acer Inc. filed identical motions to transfer in the three lawsuits filed against it by SVV Technology Innovations, Inc. *See SVV Technology Innovations, Inc. v. Acer Inc.*, Nos. 6:22-cv-639, -640, -641-ADA. Unless stated otherwise, docket citations are to Civil Case No. 6:22-cv-639-ADA.

the following asserted patents asserted in the three pending lawsuits: (1) 6:22-cv-639: U.S. Patent Nos. 8,290,318 ("'318 Patent"), 9,880,342 ("'342 Patent"), 10,439,089 ("'089 Patent"), and 10,627,562 ('562 Patent"); (2) 6:22-cv-640: U.S. Patent Nos. 8,740,397 ("'397 Patent"), 9,678,321 ("'321 Patent"), 10,797,191 ("'191 Patent"), 10,838,135 ("'135 Patent"), and 10,868,205 ("'205 Patent"); and (3) 6:22-cv-641: U.S. Patent Nos. 10,269,999 ("'999 Patent"), 10,439,088 ("'088 Patent"), 10,613,306 ("'306 Patent"), and 11,276,795 ("'795 Patent") (collectively, the "Asserted Patents."). *See* ECF No. 1, at 1; Civil Case Nos. 6:22-cv-640, ECF No. 1 at 1; 6:22-cv-641, ECF No. 1 at 1. SVVTI generally contends that each of the Asserted Patents relates to LED-backlit LCD display panels, which SVVTI alleges is incorporated into each of the Accused Products. *See generally* ECF No. 1 ¶¶ 25–56; Civil Case No. 6:22-cv-640, ECF No. 1 ¶¶ 25–60; Civil Case No. 6:22-cv-641, ECF No. 1 ¶¶ 25–55.

On October 18, 2022, Acer filed a Motion to Transfer Case to the NDCA. ECF No. 22. The Court granted Acer's Unopposed Motion for Leave to File its Corrected Motion to Transfer Venue to the NDCA on December 6, 2022. ECF No. 27. SVVTI responded in opposition on February 20, 2023. ECF No. 35. Acer replied on March 6, 2023. ECF No. 39. Acer's Motion is now ripe for resolution.

## II.    LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit—here, the Fifth Circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides in part that "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought . . . " *Id.* "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration

of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under § 1404(a) is whether a civil action "'might have been brought' in the destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) [hereinafter *Volkswagen II*]. If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (footnote omitted). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter *Volkswagen I*] (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The moving party has the burden to prove that a case should be transferred for convenience. *Volkswagen II*, 545 F.3d at 314. The burden is not simply that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 314–15. While "clearly more convenient" is not the same as the "clear and convincing" standard, the moving party must still show more than

a mere preponderance. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show an individual factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

## III.    DISCUSSION

At the outset, the Court addresses SVVTI's argument that many statements of Acer's declarants should be excluded. ECF No. 35 at 3. First, SVVTI claims that Ms. Shang's declaration should be excluded because it alleges that she regularly provides declarations for Acer's patent litigation, and this Court should be skeptical of her as a "repeat" declarant. *Id.* (citing, *e.g., Scramoge Tech. Ltd. v. Apple, Inc.*, No. 6:21-cv-00579-ADA, 2022 WL 1667561, at *2-5 (W.D. Tex. May 25, 2022). But Acer responds that SVVTI's cited authority does not apply here, because the declarants at issue in those cases either had a long history of submitting vague, unreliable, and misleading declarations to this Court or the declarant lacked personal knowledge and used disclaimers. *See* ECF No. 39 at 5. It asserts that Ms. Shang has been employed by Acer for more than 20 years and has personal knowledge about Acer operations based on that experience. *Id.* Acer contends that during her deposition, she provided details about Acer and its subsidiaries without issue. *Id.*

As to SVVTI's argument regarding exclusion of Ms. Shang's declaration because she regularly provides declarations, without more, the Court does not agree. But SVVTI further contends that Ms. Shang's declaration conflicts with her deposition testimony. *See* ECF No. 35 at 3–4. It alleges that Ms. Shang's declaration states that "Acer's documents and corporate records, in physical and electronic form, are stored and maintained in Taiwan," but during her deposition, Ms. Shang stated that she was not aware where Acer's documents in electronic form were located, nor where Acer's corporate records in electronic form were stored. ECF No. 35-27 at 25:1-26:8.

Ms. Shang's declaration also states that "Acer America's documents and corporate records, in physical and electronic form, are stored and maintained in Acer America's offices in San Jose." Shang Decl. ¶10.[2] But SVVTI alleges that Ms. Shang was unable to identify any Acer America documents that would be relevant to the litigation and was unable to identify where Acer America's documents were stored. ECF No. 35-27 at 26:9-28:19. SVVTI also asserts that Acer did not investigate whether Acer America employees in Texas had relevant knowledge regarding this lawsuit. *Id.* at 36:16-39:8. On this last point, the Court agrees.

Acer contests these allegations, arguing that Ms. Shang's inability to answer questions during her deposition was based on the vagueness of the questions at issue. ECF No. 39 at 5. The Court acknowledges that Ms. Shang expressed her confusion regarding some questions. ECF No. 35-27 at 24:2-25:25; 27:2-28:19. But this does not explain Ms. Shang's failure to independently investigate the Acer America employees she identified that work in Texas. ECF No. 28-1 ¶ 9. SVVTI attempted to elicit more information regarding an Acer America employee working remotely in Texas, but Ms. Shang was unprepared to answer. ECF No. 35-27 at 37:10–37:24. She admits she does not know the specific employee as "Acer is a very large company" and her information regarding this litigation came from Acer America. *See id.* Her failure to do any investigation into the Texas employees and whether they may have relevant knowledge severely undercuts her credibility regarding these witnesses.

The Court will not strike Ms. Shang's declaration altogether, but it will discount Ms. Shang's testimony regarding the Texas witnesses and resolve any conflicting evidence about those employees, where provided, against Acer.

---

[2] Acer America Corporation ("Acer America") is Acer's subsidiary in San Jose, California. ECF No. 28 at 3.

### A.  Venue and Jurisdiction in the Transferee Forum

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the NDCA. To satisfy § 1404(a)'s preliminary question, the movant must show that venue and jurisdiction would have been proper in the transferee forum when the plaintiff filed suit. *See Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, No. 6:20-CV-00876-ADA, 2022 WL 958384, at *5 (W.D. Tex. Mar. 25, 2022).

Acer argues that SVVTI could have filed this action in the NDCA because it is a foreign corporation and thus may be sued in any judicial district under 28 U.S.C. § 1391(c)(3). ECF No. 28 at 5. Because SVVTI relies on this provision to claim proper venue in the WDTX, Acer alleges the same would be true in California. *Id.* at 10. Further, Acer claims that venue here is proper under a stream of commerce theory, because SVVTI alleges in its Complaint that "Acer has placed or contributed to placing infringing products into the stream of commerce via an established distribution channel knowing or understanding that such products would be sold and used in the United States, including in the Western District of Texas." *Id.* (quoting ECF No. 1 ¶ 5; Civil Case No. 6:22-cv-00640 ECF No. 1, ¶ 5; Civil Case No. 6:22-cv-00641 ECF No. 1, ¶ 5).

But SVVTI contends that Acer has not established that it would be subject to specific personal jurisdiction in the NDCA. ECF No. 35 at 5–6 (citing *TMT Systems, Inc. v. Medtronic, Inc.*, No. 6-20-cv-973-ADA, 2021 WL 5316406 (W.D. Tex. Oct. 12, 2021) (rejecting the assumption that "if this Court finds that Medtronic is subject to venue in this District, then venue must be proper against Medtronic in the NDCA under the second prong of § 1400(b), because 'it has a wholly-owned subsidiary, Medtronic Vascular, with a regular and established placed of business' in the NDCA.")). SVVTI argues that the presence of Acer's subsidiary, Acer America,

6

does not provide Acer personal jurisdiction in the NDCA. *Id.* (citing *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) ("it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its [specific personal] jurisdiction over him."). Further, SVVTI argues that its allegations in its Complaint involving the WDTX do not apply to the NDCA. *Id.* at 6.

The Court agrees with SVVTI that Acer has not established that the NDCA would have jurisdiction over it. As a foreign defendant, venue is proper in the NDCA under 28 U.S.C. § 1391(c)(3). The Court, however, rejects the argument that because Acer's subsidiary, Acer America, is in and engages in continuous business in the NDCA, that the NDCA also has jurisdiction over Acer. *See TMT Systems,* 2021 WL 5316406. Acer's conduct must form the basis for the NDCA's personal jurisdiction over it, and Acer fails to point to any evidence showing that this requirement is met. As far as the Court can tell, Acer does not argue alter-ego or agency to establish imputation of Acer America's contacts to Acer; indeed, it has not provided any facts or arguments as to why this Court should consider ignoring corporate formalities. Nor does it make any other argument regarding any contacts it may have apart from Acer America in the transferee forum such to establish personal jurisdiction there.

The Court similarly finds that Acer has not established that the NDCA would have jurisdiction over it under a stream-of-commerce theory. Acer's argument that SVVTI's allegations in its Complaint should apply to the NDCA is not sufficient to carry its statutory burden. SVVTI in its Complaint specifically alleges that Acer has placed or contributed to placing infringing products into the stream of commerce knowing or understanding that such products would be sold and used in the United States, *including in the Western District of Texas*. *See* ECF No. 1 ¶ 5 (emphasis added). It goes on to allege that "Defendant, directly or through affiliates, subsidiaries,

agents, or intermediaries, places infringing products into the stream of commerce knowing they will be sold and used *in Texas*." *Id.* ¶ 13 (emphasis added). SVVTI does not make such similar allegations about California. *See id.*

Acer further does not allege any facts that would allow the Court to determine whether it placed its products into the stream of commerce knowing or understanding that such products would reach California. Indeed, Acer acknowledges that Acer America imports the Accused Products into the United States directly from third party original design manufacturers, not Acer. ECF No. 39 at 1. Without more, this is not sufficient to bring Acer within the ambit of California's jurisdiction under the stream-of-commerce theory.

Even after SVVTI challenges personal jurisdiction as to Acer in the NDCA, Acer, in its Reply, only contends that SVVTI's personal jurisdiction theory based on a claim that Acer placed products into the stream of commerce for the United States at large, which "obviously includes both California and Texas," should establish jurisdiction in the NDCA. ECF No. 38 at 1. But as already stated, SVVTI does not specifically allege that Acer placed its products into the stream of commerce knowing they would reach California. *See generally* ECF No. 1. Without any other facts, this Court is unconvinced that this is enough for Acer to show that venue and jurisdiction would have been proper in the transferee forum when the plaintiff filed suit.[3]

In view of the above, the Court thus finds that the § 1404(a) threshold requirement has not been met because Acer has not carried its burden to show that the NDCA would have jurisdiction over it. Thus, the Court **DENIES** the Motion on this basis alone. Alternatively, as discussed below, the Court also **DENIES** based on its analysis of the private and public interest factors.

---

[3] Acer waived any argument it may have as to personal jurisdiction here, because it failed to move to dismiss for lack of personal jurisdiction in response to the Complaint. *See* Fed. R. Civ. P. 12(h)(1); ECF No. 8.

**B.  The Private Interest Factors**

*i.*    *The Cost of Attendance and Convenience for Willing Witnesses*

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009). According to Fifth Circuit law, if the distance between a current venue and a proposed venue is more than 100 miles, the inconvenience to witnesses increases in direct relationship to the additional distance they must travel if the matter is transferred. *Volkswagen II*, 545 F.3d at 317. But it is unclear when the 100-mile rule applies, as the Federal Circuit has stated that courts should not apply the rule "rigidly" in cases where witnesses would be required to travel a significant distance no matter what venue they testify in. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). According to the Federal Circuit, time is a more important metric than distance. *Id.* However, the Federal Circuit has also held that when willing witnesses will have to travel a significant distance to either forum, the slight inconvenience of one forum in comparison to the other should not weigh heavily on the outcome of this factor. *In re Apple*, 979 F.3d at 1342. When analyzing this factor, the Court should consider all potential witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017).

Acer asserts that this factor favors transfer as all its witnesses are in San Jose or Taiwan. ECF No. 28 at 7. It identifies Acer America Enterprise Resource and Planning Senior IT Manager, Sanjeev Kumar, as a relevant witness in the NDCA, knowledgeable about issues related to U.S. sales and importation. *Id.* It also identifies Acer America Vice President of Marketing, Richard Black, as the witness expected to testify about marketing. *Id.* Both Mr. Kumar and Mr. Black are

in San Jose. *Id.* It also asserts that its other witnesses, expected to cover product development, procurement, and corporate issues, will all come from Acer in Taiwan. *Id.* Acer argues that these witnesses would find traveling from Taiwan to San Francisco considerably less burdensome than travel to Waco, as three airlines provide non-stop flights to San Francisco from Taipei. *Id.* at 8. Flying to Waco from Taipei, Acer argues, would be an extra burden, as there are no direct flights and would require an extra day of travel. *Id.* Finally, Acer asserts that trial in the NDCA would be more convenient for SVVTI's sold officer, Dr. Vasylyev, as he resides in Elk Grove, just outside of Sacramento. *Id.*

On the other hand, SVVTI counters that this factor should be neutral because Acer has no relevant employees in the U.S. ECF No. 35 at 7 (citing *Kajeet, Inc. v. Trend Micro, Inc.*, 2022 U.S. Dist. LEXIS 6603, at *14 (W.D. Tex. Jan. 12, 2022) (finding Taiwan witnesses neutral)). It also argues that its principal and the inventor of the patents-in-suit, Dr. Vasylyev, is a willing witness who avers that he would prefer to avoid the inconvenience of dealing with San Francisco, San Jose, or Oakland, California, and instead would prefer to attend trial in Waco. ECF No. 35-1 at 6, 8–9. Lastly, SVVTI asserts that the cost of holding a trial in the NDCA is far more expensive for every traveling witness than Waco. In support, it cites to a Bloomberg article reporting that San Francisco is "the world's most expensive place for visitors to spend the night" and to screenshots from Hotels.com showing three to five-star rated hotels in Waco that cost $57 to $397 per night, compared to hotels in San Francisco that cost about $80 to $2,400 per night. *See* ECF Nos. 35-17 at 8–11; 35-15–35-16.

The Court finds that this factor weighs in favor of transfer. As to any Taiwan-based witnesses, although the distance between Taiwan and the CDCA is slightly shorter than the distance between Taiwan and Waco, the Federal Circuit has stated that courts should not apply the

rule "rigidly" in cases where witnesses would be required to travel a significant distance no matter what venue they testify in. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing Volkswagen II, 545 F.3d at 317). Indeed, "the difference in distance is not as important as the difference in travel time and the fact that the witnesses would be required to be away from home for several days in any event." *See In re Google*, 2021 WL 4427899, at *4. The Taiwan-based witnesses will be required to travel a significant distance and be away from their homes for an extended period regardless of venue. *See In re Apple*, 979 F.3d at 1342; *see also AudioEye, Inc. v. accessiBe Ltd.*, No. 6:20-CV-997-ADA, 2022 WL 827805, at *6 (W.D. Tex. Mar. 9, 2022) ("The Court accords the convenience of [] Israeli-based witnesses little weight; they will travel a significant distance irrespective of transfer."). The Court thus declines to accord these witnesses much weight in its analysis. The Court will, however, accord weight to Mr. Kumar's and Mr. Black's convenience, as Acer credibly alleges that they are relevant witnesses with knowledge of Acer's sales, importation, and marketing of Acer products.

Additionally, Dr. Vasylyev resides in Elk Grove, in the Eastern District of California. ECF No. 35-1 ¶ 2. SVVTI contends that because he would be required to travel over 100 miles to the NDCA, under the Fifth Circuit's "100-mile rule," travelling to either district will be inconvenient for him. The Court acknowledges that Dr. Vasylyev may have to travel over 100 miles to either District, but only just so. ECF Nos. 35-4; 35-7 (showing the distance from Dr. Vasylyev's home and work to the San Francisco courthouse ranges from 110 to 116 miles). Because of this, the Court will not accord much weight to SVVTI's argument that Dr. Vasylyev's prefers to travel to this District over the NDCA. On the other hand, the Court will take into account the evidence SVVTI provides to show that the cost of attendance in Waco, on average, would be less expensive than in San Francisco. *See* ECF No. 35 at 7.

*Conclusion.* Accordingly, taking into account Mr. Kumar's and Mr. Black's presence in the NDCA, Dr. Vasylev's in Northern California, and the cost of attendance in Waco compared with San Francisco, the Court finds this factor weighs in favor of transfer.

### ii.   The Relative Ease of Access to Sources of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is relative ease of access, not absolute ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020). However, the Fifth Circuit finds that "the location of evidence bears much more strongly on the transfer analysis when, as in *Volkswagen*, the evidence is physical in nature." *In re Planned Parenthood Fed'n of Am., Inc.,* No. 22-11009, 2022 WL 16549164, at *3 (5th Cir. Oct. 31, 2022).

Acer argues that SVVTI's principal place of business in Sacramento, which is closer to the NDCA than this District, coupled with Acer America's relevant evidence and its custodians in the NDCA, push this factor towards transfer. ECF No. 28 at 10. But Acer only vaguely alleges that "[r]elevant evidence from Acer is located in the [NDCA]." *Id.*  SVVTI, in response, argues that Acer fails to explain how such Acer America information relates to this case. ECF No. 35 at 11. It argues that Acer does not allege the location of Acer America's servers, the categories of information stored on its servers, or whether there are geographic limitations on access to Acer America's servers, nor does it identify any "paper" documents that may be relevant. *Id.* Further, SVVTI asserts that Ms. Shang's deposition testimony conflicted with her declaration regarding the location of documentary evidence. *Id.* Finally, SVVTI counters that its documents are stored on

cloud-based servers, accessible from anywhere, the location of which is not presently known. *Id.* Thus, it contends that this factor is neutral. *Id.*

The Fifth Circuit's decision in *In re Planned Parenthood* indicates a shift in the analysis of this factor. The Fifth Circuit has recently agreed with a district court that concluded that this factor is neutral because electronic evidence is equally accessible in either forum. *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022). The Fifth Circuit held that "[t]he location of evidence bears much more strongly on the transfer analysis when . . . the evidence is physical in nature." *Id*. But the Federal Circuit has held that it is an error to conclude this factor is neutral because electronic documents are easily accessible in both forums. I*n re Apple, Inc.*, No., 2022 WL 1196768, at *4 (Fed. Cir. Apr. 22, 2022). To the extent that these two holdings can be reconciled, the Court concludes that the location of physical evidence is more important to this analysis than the location of where electronic documents are typically accessed. However, the Court still considers the location of document custodians of electronic documents in its analysis of this factor. *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021).

On balance, the Court finds this factor is neutral. Acer's only argument as to why this factor should favor transfer is based on Acer America's presence in the NDCA, and thus its access to sources of proof there. Considering that Acer does not contend that any design or development takes place in the NDCA, nor does it allege the location of Acer America's servers, the categories of information stored on its servers, or whether there is any physical documentation located in the NDCA, the Court accords this argument little weight. To be sure, Acer acknowledges that its

documentary evidence, such as product specification and design documents, is in Taiwan. ECF No. 39 at 3–4. Evidence stored or accessed from Taiwan is thus neutral for purposes of this factor.[4]

Further, SVVTI asserts that its documents are stored on cloud-based servers, accessible from anywhere, the location of which is not presently known. ECF No. 35 at 11. Acer does not argue otherwise; nor does it show any relevant physical evidence is stored at SVVTI's principal place of business. Regardless, Sacramento is not in the NDCA.

*Conclusion.* Accordingly, this factor is neutral.

### iii.   The Availability of Compulsory Process to Secure the Attendance of Witnesses

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Fintiv Inc.*, 2019 WL 4743678, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (citing *In re Genentech*, 566 F.3d at 1345). The Federal Circuit has held that "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, 2018 WL 4692486, at *3 n.1.

---

[4]As to Acer's argument regarding its document custodians in the NDCA, ECF No. 28 at 10, as discussed below, the Court also accords weight to some nonparty witnesses within its subpoena power in Texas. *See supra* at 15–16. Accordingly, there are potentially relevant document custodians in both Districts, which further supports that this factor is neutral.

Because it alleges that the NDCA would have subpoena power over Dr. Vasylyev, SVVTI's CEO and sole inventor, Acer argues this factor favors transfer. ECF No. 28 at 9. In its Response, though, SVVTI argues that Dr. Vasylyev is a willing witness and should not be considered here, and the Court agrees.

Acer also asserts that it is not aware of any potential witnesses within this Court's subpoena power. ECF No. 28 at 9. But SVVTI contends that Acer America has 18 employees within Texas and Acer Service, Acer's subsidiary in Temple, Texas, in this District, has more than 200 employees working there. ECF No. 35 at 9–10. Because it argues that Acer has not produced evidence to prove there is not valuable evidence within Texas, it asserts that this factor should be neutral. *Id*. The Court agrees.

As discussed above, Ms. Shang identified 18 Acer America employees working remotely in Texas but failed to investigate whether these employees have any relevant knowledge. Acer argues that Mr. Kumar and Mr. Black were identified as relevant due to their knowledge and experience regarding the importation, sales, and marketing of Acer products in the United States. ECF No. 39 at 2. Although the Court considers these relevant witnesses and accounted for them in its analysis of the willing witnesses factor, this does not explain why Ms. Shang was unprepared to answer questions regarding the Texas-based witnesses. Acer further argues that the documents it produced indicates that they are mostly "administrative or back-office staff," but the documents it cites to also shows that the Texas employees includes six employees who work in the same department as Mr. Kumar. *See* ECF No. 40-1. Although it argues that SVVTI "has identified no relevant information they possess," the Court is not persuaded by this assertion. SVVTI sought to elicit more information regarding these employees during Ms. Shang's deposition, but she was

unprepared to answer these questions and acknowledged she relied only on employee lists and organizational charts provided by Acer America without independent investigation.

Acer also argues that Acer Service's Texas employees "have no bearing on the inquiry" because Acer Service is a repair facility and its employees do not perform product design or distribution. ECF No. 39 at 2. That Acer Service is a repair facility may not be in dispute, but again, Ms. Shang did not undertake any investigation to discern whether Acer Service employees in Texas have any relevant knowledge of the Accused Products.

Acer's failure to investigate Acer America and Acer Service employees in Texas fails to provide a sufficient basis for the Court to know whether relevant witnesses, documents, and information exist in this District. Given Ms. Shang's seemingly deliberate failure to investigate the witnesses in this District, the Court is not persuaded by Acer's assertion that the Texas-based witnesses should not be considered relevant. It will, accordingly, accord some weight to these witnesses since they are within this Court's subpoena power.

*Conclusion.* Taking into consideration that there are potentially relevant non-party witnesses in this District and in the NDCA, this factor is neutral.

### iv.   *All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive*

When considering the private interest factors, courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation before the trial court involving the same patent-in-suit, and pertaining to the same underlying technology and accusing similar services, [the

Federal Circuit] cannot say the trial court clearly [abuses] its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 n.3 (Fed. Cir. 2010).

Acer argues that this factor is neutral because this Court need not consider the other pending SVVTI cases involving the same patents,[5] as one defendant in those cases has already sought transfer of its actions and the other defendant is expected to do the same. The Court agrees. The co-pending cases also currently have pending motions to transfer, so the Court will not rule that the cases weigh against transfer. *See In re Google*, 2021 WL 5292267, at *3. ("co-pending suits are not to be over-weighed if they are also subject to motions to transfer.").

SVVTI contends also that this Court presided over SVVTI's enforcement of the same patents against Samsung;[6] thus, the Court is familiar with the patents, claims, and technology at issue in the present litigation. ECF No. 35 at 13. Given that the suit against Samsung was dismissed before the Court held a *Markman* hearing, though, the Court will not accord much weight to this argument. Further, while fact discovery has already opened, this case has not yet proceeded to a *Markman*, and "garden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer." *In re Radmax*, 720 F.3d at 289.

*Conclusion.* Accordingly, the Court finds that this factor is neutral.

**C. The Public Interest Factors**

***i.   Administrative Difficulties Flowing from Court Congestion***

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 Fed. App'x 929, 932 (Fed. Cir. 2020). It considers

---

[5] *SVV Technology Innovations, Inc. v. ASUSTeK Computer Inc.*, No. 6:22-cv-311, - 312, - 313; *SVV Technology Innovations Inc. v. Micro-Star International Co., Ltd.*, No. 6:22-cv-511, - 512, - 513.
[6] *SVV Technology Innovations Inc. v. Samsung Electronics Co., Ltd., et al*., No. 6:20-cv-139-ADA.

the "[t]he speed with which a case can come to trial and be resolved." *In re Genentech, Inc.*, 566

F.3d at 1347. In this analysis, court congestion is considered "the most speculative" factor, and

when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the

transferee district court should not alone outweigh all those other factors." *Id.*

      The Court finds this factor is neutral. The Federal Circuit has previously held that there are

"no significant differences in caseload or time-to-trial statistics" between the WDTX and the

NDCA. *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1322 (Fed. Cir. 2021). But recent statistics

show that this Court has been able to bring cases to trial within two years.[7] Acer concedes that

time from filing to trial was slightly faster in the WDTX. ECF No. 18 at 12. The Federal Circuit

has even acknowledged Congress's interest in the "quick" resolution of patent disputes. *See, e.g.*,

*Ethicon Endo-Surgery, Inc. v. Covidien LP*, 826 F.3d 1366, 1367 (Fed. Cir. 2016). But the Federal

---

[7] *See, e.g., MV3 Partners v. Roku, Inc.,* 6:18-cv-00308-ADA (W.D. Tex., filed Oct. 16, 2018) (23.7 months from case filing to trial); *CloudofChange, LLC, v. NCR Corp.*, No. 6:19-cv-00513-ADA (W.D. Tex., filed August 30, 2019) (20.3 months from case filing to trial); *VLSI Tech. LLC v. Intel Corp.*, No. 6:21-cv-00057-ADA (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *Freshub, Inc. v. Amazon.Com Inc.*, No. 6:21-cv-00511-ADA (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc*., No. 6:19-cv-00044-ADA (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial); *Profectus Tech. LLC v. Google LLC*, 6:20-cv-00101-ADA (W.D. Tex., filed Feb. 10, 2020) (19.6 months from case filing to trial); *Jiaxing Super Lighting v. CH Lighting Tech.*, 6:20-cv-00018-ADA (W.D. Tex., filed Jan. 10, 2020) (21.7 months from case filing to trial); *VideoShare LLC v. Google LLC*, 6:19-cv-663-ADA (W.D. Tex., filed Nov. 15, 2019) (23.8 months from case filing to trial); *NCS Multistage Inc. v. Nine Energy Serv.'s, Inc.*, No. 6:20-cv-00277-ADA (W.D. Tex., filed Mar. 24, 2020) (21.8 months from case filing to trial); *EcoFactor, Inc. v. Google LLC*, No. 6:20-cv-00075-ADA (W.D. Tex., filed Jan. 31, 2020) (24 months from case filing to trial); *Densys Ltd. v. 3Shape Trio A/S*, 6:19-cv-00680-ADA (W.D. Tex., filed Nov. 26, 2019) (28.3 months from case filing to trial); *Appliance Computing III, Inc. v. Redfin Corp.*, No. 6:20-cv-00376-ADA (W.D. Tex., filed May 11, 2020) (24 months from case filing to trial); *Caddo Sys. Inc., v. Microchip Tech. Inc.*, No. 6:20-cv-00245-ADA (W.D. Tex., filed March 27, 2020) (26.5 months from case filing to trial); *SunStone Information Def., Inc. v. International Bus. Machines Corp.*, No. 6:20-cv-1033-ADA (W.D. Tex., filed Nov. 9, 2020) (21.0 months from case filing to trial); *NCS Multistage Inc. v. TCO Products Inc.*, No. 6:20-cv-00622-ADA (W.D. Tex., filed Sept. 9, 2020) (23.4 months from case filing to trial); *Ravgen, Inc. v. Lab. Corp. of Am. Holdings*, No. 6:20-cv-00969-ADA (W.D. Tex. filed Nov. 16, 2020) (23.1 months from case filing to trial).

Circuit has consistently told this Court to diminish the weight given to this factor and has concluded that the speed of the transferee district should not alone outweigh all other factors. *See In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023)(determining that "it was a clear abuse of discretion [for this Court] to accord this factor any weight" where "[i]t appears undisputed that [the patentee] is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution and give some significance to the time-to-trial difference.").

    *Conclusion.* Thus, the Court finds that this factor is neutral.

    **ii.**    ***Local Interest in Having Localized Interests Decided at Home***

    Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent cases "are not a fiction." *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-CV-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (emphasis in original) (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)). Courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365

(Fed. Cir. 2011)). To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *Id.* at 1319.

Because of Acer America's connections to the NDCA and its role in the sale and importation of the Accused Products, Acer argues that this factor weighs in favor of transfer there. ECF No. 28 at 11–12. SVVTI counters that because Acer's subsidiaries have more employees working in Temple, Texas than in San Jose, California, this factor weighs against transfer. ECF No. 35 at 14.

The Court finds this factor weighs slightly in favor of transfer. Acer has established that Acer America is responsible for the importation and sale of the Accused Products within the United States. Yet because Acer is a non-party and indisputably not responsible for any design, development, or manufacturing, the Court accords only some weight to its presence there. *See In re Apple*, 979 F.3d at 1345. Acer argues that Acer Service employees in Texas do not engage in any relevant conduct. ECF No. 39 at 4. But the Court already determined that Acer did not investigate whether Acer Service employees in Texas have any relevant knowledge of the Accused Products. The Court is left only with Acer's assertions that Acer Service employees are irrelevant, and thus, it is without a sufficient basis to evaluate whether Acer Service's presence in Texas gives this District a local interest in this suit. Regardless, the Court is satisfied that the NDCA likely has a stronger local interest, given that Acer America is responsible for the importation and sales of the Accused Products.

*Conclusion.* Accordingly, the Court finds this factor weighs slightly in favor of transfer.

### iii.    *Familiarity of the Forum with the Law That will Govern the Case*

Acer argues that this factor should be neutral, and SVVTI agrees. ECF No. 28 at 12; ECF No. 35 at 14. The Court finds that this factor is neutral—both forums are familiar with the law that will govern the case.

  **iv.**   ***Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law***

  Acer argues that this factor is neutral, and SVVTI again agrees. ECF No. 28 at 12; ECF No. 35 at 14. The Court finds that this factor is neutral.

## IV.   CONCLUSION

  Having considered the private and public interest factors, the Court's conclusions for each factor is summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Cost of attendance for willing witnesses | Favors transfer |
| Relative ease of access to sources of proof | Neutral |
| Availability of compulsory process to secure the attendance of witnesses | Neutral |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Neutral |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest | Slightly favors transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

  One factor favors transfer, one factor slightly favors transfer, whereas the other six are neutral. Given the foregoing, Acer fails to meet its burden to show that the NDCA is a clearly more convenient forum.

  **IT IS THEREFORE ORDERED** that Defendant Acer Inc.'s Corrected Motion to Transfer Venue to the Northern District of California (ECF No. 28) is **DENIED.**

  **SIGNED** this 3rd day of April, 2023.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE