**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **SVV TECHNOLOGY** | § | |
| **INNOVATIONS INC.** | § | |
| *Plaintiff*, | § | Civil Action No.  6:22-cv-00639-ADA |
| | § | Civil Action No.  6:22-cv-00640-ADA |
| **v.** | § | Civil Action No.  6:22-cv-00641-ADA |
| | § | |
| **ACER INC.** | § | ▮▮▮▮▮▮▮ |
| *Defendant*. | § | |
| | § | |

**PLAINTIFF SVV TECHNOLOGY INNOVATIONS INC.'S MOTIONS *IN LIMINE***

# TABLE OF CONTENTS

I.      Non-Infringing Alternatives and Design-Arounds.                                   1

II.     Arguments Contrary to the Court's Claim Constructions, Including Characterizations of the Asserted Patents as "Photovoltaic" or "Solar Panel" Patents                5

        A.      Defendant should not be permitted to argue that its previously rejected constructions are the "plain and ordinary meaning" of terms that the Court has already construed                6

        B.      Defendant should not be allowed to refer to Asserted Patents as "photovoltaic patents" or "solar panel patents"                7

        C.      Defendant should not be allowed to re-argue to a jury a previously-rejected claim construction proposal                8

III.    Any argument, evidence, testimony, reference, or suggestion that Defendant practices the prior art; concerning a comparison between an accused instrumentality and a purported prior art patent, device, method, process, product, system, or document; or conerning a comparison between an accused instrumentality and a commercial product, or third parties' products.                9

IV.     Any reference to dropped claims, theories, patents, or accused products.                11

V.      Any argument, evidence, testimony, reference, or suggestion that SVVTI has not asserted its patents against other entities, including Defendant's suppliers.                11

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Accentra, Inc. v. Staples, Inc.*, No. CV-07- 5862 ABC (RZx), 2010 WL 8450890 (C.D. Cal. Sept. 22, 2010) ........................................................................................................................... 1

*Acorn v. Samsung*, No. 2:19-CV-00347-JRG (E.D. Tex. Apr. 30, 2021), Dkt. No. 331.............. 11

*Apple, Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846-LHK., 2012 WL 3155574 (N.D. Cal. Aug. 2, 2012) ......................................................................................................................... 1

*Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575 (Fed. Cir. 1995) ........................... 10

*Collaborative Agreements, LLC v. Adobe Systems Inc., et al.*, No. A-14-CV-356-LY, 2015 WL 2250391 (May 12, 2015) ....................................................................................................... 8

*Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, No. 2:15-cv-00037-RWS-RSP, 2017 WL 2651618 (E.D. Tex. Jun. 20, 2017) ................................................................................ 1

*Ericsson Inc. v. TCL Commc'n Holdings, Ltd.*, No. 2:15-CV-00011-RSP, 2017 WL 5137401 (E.D. Tex. Nov. 4, 2017) ....................................................................................................... 4

*Fenner Inv., Ltd. v. Microsoft Corp.*, 632 F. Supp. 2d 627 (E.D. Tex. 2009) ............................... 8

*Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010) .................................... 8

*Freeny v. Murphy Oil Corp.*, No. 2:13-CV-791-RSP, 2015 WL 5144347 (E.D. Tex. June 4, 2015) ..................................................................................................................................... 5

*Freshub, Inc. v. Amazon.com Inc.*, No. 6:21-cv-00511-ADA, Dkt. 222 (W.D. Tex. Jun. 13, 2021) ..................................................................................................................................... 2

*Huawei Tech. Co. Ltd. v. Verizon Comm. Inc.*, 2:20-CV-00030-JRG, Dkt. 462 (E.D. Tex., Jul. 02, 2021) ............................................................................................................................. 11

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928 (N.D. Cal. 2015) . 1

*Intell. Ventures II LLC v. FedEx Corp.*, No. 2:16- CV-00980-JRG, 2018 WL 10638138 (E.D. Tex. Apr. 26, 2018)............................................................................................................... 10

*Optis Wireless Tech. v. Apple Inc.*, No. 2:19- CV-00066-JRG, Dkt. 668 (E.D. Tex. Aug. 9, 2021) ................................................................................................................................... 10

*Ravgen, Inc. v. Lab'y Corp. of Am. Holdings*, No. 6:20-cv-00969-ADA (W.D. Tex. Oct. 4, 2022) ..................................................................................................................................... 2

*SEVEN Networks, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:17-cv-441-JRG, Dkt. 578 (E.D. Tex. Dec. 13, 2018)....................................................................................................................... 2

*Smartflash LLC v. Apple Inc.*, No. 6:13-CV-447-JRG-KNM, 2015 WL 11089593 (E.D. Tex. Jan. 29, 2015) ............................................................................................................................. 10

*Solas OLED Ltd. v. Samsung Display Co. Ltd.*, No. 2:19-cv-152-JRG, Dkt. 279 (E.D. Tex. Sep. 30, 2020) ......................................................................................................................... 10, 11

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357 (Fed. Cir. 2002) .. 10

*Textron Innovations Inc. v. SZ DJI Tech. Co., Ltd. et al.*, No. 6:21-cv-740-ADA (W.D. Tex. Apr. 19, 2023), ECF No. 353 .......................................................................................................... 9

*Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, No. 2-17-cv-651, Dkt. 208 (E.D. Tex. Apr. 10, 2019) ....................................................................................................................................... 11

*United Servs. Auto. Ass'n v. Wells Fargo Bank, N.*A., No. 2:18-CV-00245-JRG Dkt. 294 (E.D. Tex., Oct. 30, 2019) ............................................................................................................... 11

*VLSI Tech. LLC v. Intel Corp.*, No. 6:21-cv-299-ADA (W.D. Tex. Apr. 15, 2021), ECF No. 587 ........................................................................................................................... 9

## <u>TABLE OF EXHIBITS</u>

Exhibit A        Rebuttal Expert Report of Dr. Zane Coleman

Exhibit B        Plaintiff's First Set of Interrogatories (Nos. 1-12) to Defendant

Exhibit C        Defendant's Objections and Second Supplemental Responses to Plaintiff's First
                 Set of Interrogatories [Nos. 1-3, 5-9 and 12]

Exhibit D        Plaintiff's Rule 30(b)(6) Deposition Notice to Defendant

Exhibit E        Deposition Transcript of Defendant's Corporate Designee Mark Ho

Exhibit F        Deposition Transcript of Defendant's Corporate Designee Kate Shang

Exhibit G        Joint Claim Construction Statement

Exhibit H        Claim Construction Order

Plaintiff SVV Technology Innovations Inc. ("SVVTI") respectfully moves the Court *in limine* for an order excluding any reference, evidence, testimony (both lay and expert), or arguments as follows:

## I.     Non-Infringing Alternatives and Design-Arounds

Defendant should be precluded from presenting any evidence or argument regarding the alleged availability of non-infringing alternatives or design-arounds that Defendant first introduced with its rebuttal expert report as it affirmatively elected not to provide any such information during discovery. *See, e.g., Accentra, Inc. v. Staples, Inc.*, No. CV-07- 5862 ABC (RZx), 2010 WL 8450890, at *6-7 (C.D. Cal. Sept. 22, 2010); *see also Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, No. 2:15-cv-00037-RWS-RSP, 2017 WL 2651618, at *10-12 (E.D. Tex. Jun. 20, 2017) (precluding testimony of non-infringing alternatives for not being properly disclosed in interrogatory responses); *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928, 948-49 (N.D. Cal. 2015) (holding expert is precluded from relying on conversations with witnesses when information was not disclosed until after depositions took place); *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846-LHK., 2012 WL 3155574, at *5 (N.D. Cal. Aug. 2, 2012) (striking portions of expert reports containing information when late disclosure prohibited Apple from conducting additional fact discovery regarding new and previously undisclosed theories).

Defendant's non-infringement expert, Dr. Coleman, included a section in his rebuttal report entitled "Acceptable Non-Infringing Alternatives."  Ex. A ("Coleman Rebuttal Report") ¶¶ 76-84.  Non-infringing alternatives are something on which a defendant bears the burden of proof.  In this case, SVVTI sent Defendant interrogatories seeking factual information concerning non-infringing alternatives on which Defendant intended to rely.  In response, Defendant disclosed no substantive information.  Defendant waited until its rebuttal expert report to spring non-infringing alternatives

on SVVTI.[1]  It is too late and improper for Defendant to inject this new material into the case, after fact discovery, after opening expert reports, and on the eve of dispositive motion briefing.

Moreover, A proper analysis of non-infringing alternatives includes an analysis of the "[s]imilarity of physical and functional attributes of the patentee's product[,]" "[c]onsumers' intended use for the patentee's product[,]" and the "[p]rice of the alleged substitute compared to the patented technology[.]"[2]  In other words, an "acceptable alternative must have similar functionality, meet the expectations of consumers, and not cost the consumer more than the contested technology."[3]  However, SVVTI was unable to determine the identity of any specific alleged non-infringing alternatives during fact discovery, and SVVTI was unable to probe whether any such non-infringing alternatives were "acceptable," i.e., provide similar functionality, meet the expectations of consumers, and not cost the consumer more than the contested technology.

This Court has confirmed that the untimely disclosure of non-infringing alternatives despite discovery requests is prejudicial and should be stricken.  *Freshub, Inc. v. Amazon.com Inc*., No. 6:21-cv-00511-ADA, Dkt. 222 (W.D. Tex. Jun. 13, 2021) (excluding evidence and argument regarding NIAs disclosed only in rebuttal expert reports); *see also Ravgen, Inc. v. Lab'y Corp. of Am. Holdings*, No. 6:20-cv-00969-ADA (W.D. Tex. Oct. 4, 2022).

---

[1] Courts that have addressed the issue have held that the defendant bears the burden of demonstrating commercially acceptable non-infringing alternatives.  *See SEVEN Networks, LLC v. Samsung Elecs. Co., Ltd*., No. 2:17-cv-441-JRG, Dkt. 578, at 122:6-124:10 (E.D. Tex. Dec. 13, 2018) (striking defendant's rebuttal report on non-infringing alternatives because the defendant bears the burden, even though non-infringing alternatives were identified in interrogatory response).
[2] Parr, Russell L. (2018), *Intellectual Property: Valuation, Exploitation, and Infringement* Damages, Hoboken, NJ: John Wiley & Sons, Inc., at 467.
[3] *Id*.

Defendant failed to identify any specific non-infringing alternatives during fact discovery in response to SVVTI's interrogatories.  On March 22, 2023, SVVTI propounded the following interrogatory on Defendant:[4]

> INTERROGATORY NO. 6: Separately for each asserted claim of the Patents-in-Suit and each of the Accused Products, please identify and describe all facts (including the technical and financial details) Related to any acceptable non-infringing alternative(s) or design around(s) available to You, of which You are aware, which You are presently investigating, or which You may rely upon.

On October 17, 2023, Defendant provided the following response to SVVTI's interrogatory regarding non-infringing alternatives:[5]

> RESPONSE TO INTERROGATORY NO. 6: Acer responds that, pursuant to Rule 33(d), Acer has produced documents that contain this information. Exhibit A attached hereto as well as [ACER00034896 to ACER00034900, ACER00035000 to ACER00035003, ACER00035047, and ACER00035048 to ACER00035110] identifies the documents for each accused product from which this information can be derived. Depending on the asserted patent, both Accused Products and Acer monitor products that are not accused are acceptable non-infringing alternative(s). Acer will provide its contentions on noninfringing alternatives in its expert reports submitted pursuant to the Amended Scheduling Order in this action. Acer's investigation and discovery in this matter are ongoing, and Acer reserves the right to supplement and/or revise this response as appropriate.

On July 27, 2023, SVVTI served a Rule 30(b)(6) deposition notice on Defendant, identifying the topics:[6]

---

[4] Ex. B.

[5] Ex. C.  Acer may point to a vague statement in its Interrogatory Response that "[d]epending on the asserted patent, both Accused Products and Acer monitor products that are not accused are acceptable non-infringing alternative(s)."  That single sentence provides little information, and provides no model numbers.  The first alleged non-infringing alternatives identified by model appeared in the Coleman Rebuttal Report.  *See* Coleman Rebuttal Report ¶¶ 76-84, identifying ██████████████████████████████

Acer may also argue that its Interrogatory Response "also identified Acer documents that contain the requested technical and financial details for those products."  Not so.  Acer's Interrogatory Response reference "Exhibit A" to its Response, which is attached as the last two pages of Motion Ex. C.  It contains Bates ranges of tens of thousands of pages pointing to various specifications of Acer monitors.  This data dump of Bates ranges provides no information regarding what models Acer would rely on regarding non-infringing alternatives.

[6] Ex. D.

17. The actual or anticipated cost of designing around the Patents-in-Suit including without limitation, the identification of the modifications Defendant would make to its products to design around the Patents-in-Suit; the costs of developing such modifications; the time required to develop such modifications; the amount of man-hours necessary to design around the Patents-in-Suit, whether the modifications would have any potential backward compatibility issues and, if so, how they would be addressed; whether the modifications had or would have any impact (however measured ) on the performance of the products and if so, disclose each impact, the costs that such modifications would add to any product that included the modifications, the cost of equipment, materials, manpower and facilities needed to design around, any loss of sales or loss of market share from such a design around, and the commercial acceptably of such a design around in the marketplace.

18. All efforts made by Defendant to design around or otherwise avoid infringing the Patents-in- Suit, including discussions involving your suppliers regarding the avoidance of infringement.

19. All facts relating to the identification, availability, acceptability, and cost of any noninfringing alternatives to the apparatuses claimed in the Patents-in-suit, including without limitation. a. Your use and consideration of implementing any such alternatives, including discussions involving your suppliers or potential suppliers; b. the specific alterations you would make to each Accused Product to effectuate such alternative(s); c. the specific claim limitations of the Patents-in-Suit that would be infringed without the alternatives; d. the costs associated with developing and implementing each alternative; and e. the steps and time required to develop and implement each alternative.

On August 31, 2023, Defendant's designees on Topics 17-19 were *unable* to provide *any* substantive information regarding non-infringing alternatives. *See* Ex. E (Marc Ho Tr. 54:14-60:12) and Ex. F (Shang Tr. 47:10-50:3).

Pursuant to the above discovery requests, Defendant was obligated to disclose any alleged non-infringing alternatives it planned to rely on, and underlying facts regarding those alleged alternatives, so that SVVTI could have a fair opportunity to investigate them. Defendant's failure may be used as a basis to exclude an expert's opinion regarding such alleged alternatives. *See, e.g., Ericsson Inc. v. TCL Commc'n Holdings, Ltd.*, No. 2:15-CV-00011-RSP, 2017 WL 5137401, at *11-14 (E.D. Tex. Nov. 4, 2017), *rev'd on other grounds*, 952 F.3d 1317 (Fed. Cir. 2020)

(striking opinions on non-infringing alternatives that defendant did not disclose in response to contention interrogatory).

Dr. Coleman's opinions regarding Defendant's alleged non-infringing alternatives would severely prejudice SVVTI.  Because the positions and underlying facts were not disclosed until service of the Dr. Coleman Rebuttal Report, SVVTI was deprived of the opportunity to press for additional discovery from Defendant (or any third party) regarding the alleged alternatives, including how they could be implemented and at what cost.

Defendant cannot provide an adequate explanation for its failure to timely disclose its alleged non-infringing alternatives.  *See Freeny v. Murphy Oil Corp.*, No. 2:13-CV-791-RSP, 2015 WL 5144347, at *2 (E.D. Tex. June 4, 2015) (striking portions of defendant's expert report regarding a design around theory that was not properly disclosed during fact discovery, where improperly disclosed theory was "fairly covered" by plaintiff's interrogatory and defendant failed to supplement or offer a reasonable excuse for not providing the information throughout discovery).

By withholding information regarding alleged alternatives until the Coleman Rebuttal Report, Defendant deprived SVVTI the opportunity to examine the factual bases and theories underlying these positions, which is extremely prejudicial to SVVTI. Therefore, the Court should exclude any evidence and argument at trial regarding design-arounds or non-infringing alternatives.

## II.     Arguments Contrary to the Court's Claim Constructions, Including Characterizations of the Asserted Patents as "Photovoltaic" or "Solar Panel" Patents

Defendant's non-infringement expert, Dr. Coleman, violates the Court's claim construction in two ways.  First, the "plain and ordinary meaning" of certain claim terms that Dr. Coleman proffers are those that Defendant proposed during claim construction, which were rejected by the Court.  Second, Dr. Coleman refers to certain Asserted Patents as "photovoltaic

patents" or "solar panel patents," and his characterizations reflect claim construction positions that Defendant previously argued, and the Court rejected.

**A.     Defendant should not be permitted to argue that its previously rejected constructions are the "plain and ordinary meaning" of terms that the Court has already construed**

"Light Harvesting" — Dr. Coleman opines that '306 Patent claim 40; '318 Patent claim 14; and '397 Patent claim 12 are not infringed based on his construal of the plain meaning of "light harvesting" requiring "changing light to a non-light form." *See* Coleman Rebuttal Report ¶¶ 273-276.  However, this Acer-proposed construction was rejected by the Court. *Compare* Ex. G, "JCCS," (Defendants' proposal: "device/element/layer for collecting light to change it to non-light form") *with* Ex. H, Claim Construction Order ("plain and ordinary meaning").

"Light Converting" — Dr. Coleman opines that '306 Patent claims 13, 26, 40, and 42; '999 Patent claim 1; '205 Patent claims 1 and 15; and '191 Patent claim 1 are not infringed based on his construal of the plain meaning of "light converting" requiring "changing light to a non-light form." *See* Coleman Rebuttal Report ¶¶ 235-236.  However, this Acer-proposed construction was rejected by the Court. *Compare* Ex. G, "JCCS," (Defendants' proposal: "changing light to non-light form") *with* Ex. H, Claim Construction Order ("plain and ordinary meaning").

"Photoresponsive" — Dr. Coleman opines that '088 Patent claim 26 (Coleman Rebuttal Report ¶ 367); '089 Patent claims 1 and 14 (Coleman Rebuttal Report ¶¶ 373, 375, 383); '999 Patent claim 1 (Coleman Rebuttal Report ¶ 402); and '205 Patent claim 1 (Coleman Rebuttal Report ¶ 414) are not infringed based on his construal of "photoresponsive layer" requiring changing light to electricity. *See* Coleman Rebuttal Report ¶¶ 354-355.  However, this Acer-proposed construction was rejected by the Court. *Compare* Ex. G, "JCCS," (Defendants'

proposal: "layer that changes light to electricity") *with* Ex. H, Claim Construction Order ("plain and ordinary meaning").

**B.     Defendant should not be allowed to refer to Asserted Patents as "photovoltaic patents" or "solar panel patents"**

Defendant's non-infringement expert, Dr. Coleman, referred to various Asserted Patents as "Photovoltaic Patents."  Coleman Rebuttal Report ¶¶ 50-55.  Dr. Coleman also referred to various Asserted Patents as "Light Harvesting Cover Patents" and referred to light harvesting devices with the parenthetical "such as solar panels."  Coleman Rebuttal Report ¶ 38.

Any attempt by Defendant to mischaracterize the patents as "photovoltaic patents" or "solar panel patents" or the like is a blatant attempt to mislead the jury with respect to the broader scope of the Asserted Claims.  Defendant sought a number of constructions during the claim construction process that were designed to limit the application of the Asserted Patents to the field of photovoltaic solar panels.  Each such proposal was rejected.

Defendant should not be allowed to refer to the Asserted Patents as "photovoltaic patents" or "solar panel patents," because the asserted claims do not require photovoltaic application and referring to them as such would be contrary to the Court's claim construction and would only serve to confuse and mislead the jury into believing that the claims require elements that are not present. Fed. R. Evid. 401-403.

Dr. Coleman also labels several of the Asserted Patents as "Photovoltaic Patents" – a characterization disputed at claim construction and confusing to a jury.  Dr. Coleman's characterizations reflect Defendant's claim construction proposals that Defendant previously argued, and the Court rejected.  For example, Defendant's characterization of some patents as "Photovoltaic Patents" is premised on Defendant's proposals requiring that "light harvesting" and "light converting" needs to change light into non-light form – proposals that were rejected by this Court during claim construction, as further explained in the section below.

For the term "light harvesting," Acer proposed "device/element/layer for collecting light to change it to non-light form," a construction suggesting that claims using this term would be directed to photovoltaic solar panels.  However, as explained above, Acer's proposed construction was rejected by the Court.  For the term "light converting," Acer proposed "changing light to a non-light form," a construction suggesting that claims using this term would be directed to photovoltaic solar panels.  However, as explained above, Acer's proposed construction was rejected by the Court.  For the term "photoresponsive layer," Acer proposed "layer that changes light to electricity," a construction suggesting that claims using this term would be directed to photovoltaic solar panels.  However, as explained above, Acer's proposed construction was rejected by the Court.

Defendant's only basis for referring to anything as "photovoltaic patents" or "solar panels" is to confuse and mislead the jury regarding the nature and scope of the Asserted Patents and to suggest that SVVTI would need to accuse solar panels for infringement. Thus, Defendant should be precluded from referring to the Asserted Patents as being relating to anything beyond what the claim language and the Court's construction allow.

### C.     Defendant should not be allowed to re-argue to a jury a previously-rejected claim construction proposal

This Court can and should prevent a party from re-arguing to a jury a claim construction proposal that the Court already rejected.  The Federal Circuit endorses the exclusion of such testimony.  *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206 (Fed. Cir. 2010); *see also Collaborative Agreements, LLC v. Adobe Systems Inc., et al.*, No. A-14-CV-356-LY, 2015 WL 2250391, at *9 (May 12, 2015) (citing *Finjan* for the proposition of "upholding claim construction of plain and ordinary meaning where district court prevented expert from reconstruing term at trial."); *see also Fenner Inv., Ltd. v. Microsoft Corp.*, 632 F. Supp. 2d 627, 638 (E.D. Tex. 2009) ("[N]o party should be allowed to argue to the jury claim constructions that

are contrary to the court's claim constructions or to reassert to the jury constructions that the court has already expressly or implicitly rejected."), *aff'd*, 369 F. App'x 132 (Fed. Cir. 2010); Ex. 15 (Trial Tr.) at 956:9–22, *VLSI Tech. LLC v. Intel Corp.*, No. 6:21-cv-299-ADA (W.D. Tex. Apr. 15, 2021), ECF No. 587 (excluding expert testimony because "[t]he Court finds that Intel is trying to recapture an argument that it made during claim construction that the Court rejected."); Ex. 16 (Trial Tr.) at 723:24– 724:23, *Textron Innovations Inc. v. SZ DJI Tech. Co., Ltd. et al.*, No. 6:21-cv-740-ADA (W.D. Tex. Apr. 19, 2023), ECF No. 353 (excluding expert testimony because "[I]f I rejected the requirement that plain and ordinary meaning be this, if I rejected this, then he shouldn't be saying that's the plain and ordinary meaning of it.… I mean, I've already rejected that that's the appropriate construction. I rejected it. So if you're having him argue that that's what the plain and ordinary meaning has to be, then that's not helping.").

**III.    Any argument, evidence, testimony, reference, or suggestion that Defendant practices the prior art; concerning a comparison between an accused instrumentality and a purported prior art patent, device, method, process, product, system, or document; or concerning a comparison between an accused instrumentality and a commercial product, or third parties' products**

Defendant's non-infringement expert, Dr. Coleman, suggests in his rebuttal report that certain aspects of the Accused Products are practicing the prior art.[7]  In determining infringement, the proper comparison is between an accused instrumentality and the asserted claims as construed by the Court. *See Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d

---

[7] *See, e.g.*, Coleman Rebuttal Report ¶ 66 ("Some of the light deflecting features that Mr. Credelle identifies in the Accused Products are printed white ink dots, **which have been around for well over 30 years**. Other deflecting features like cavities have also long existed. To the extent that Mr. Credelle is asserting the deflecting features formed by laser scanning are the superior elements not found in prior art (**they are prior art**), they are not superior as they do not have precise control over the direction of the reflected/deflected light, and may have only a slight performance improvement over the screen printed dots but with the expense of a longer manufacturing time.") (*emphasis added*); *id.* at ¶ 67 ("there are no optical elements in the backlights identified by Mr. Credelle that provide any significant collimation other than the brightness enhancement films, **which were widely used in prior art products**.") (*emphasis added*).

1575, 1583 (Fed. Cir. 1995) ("Literal infringement exists if each of the limitations of the asserted

claim(s) read on, that is, are found in, the accused device."). Consequently, as the Federal Circuit

has made "unequivocally clear," ***there is no "practicing the prior art" defense to infringement***.

*See Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1365 (Fed. Cir.

2002) (emphasis added); *Baxter*, 49 F.3d at 1583. Accordingly, Defendant should be precluded

from advancing positions that compare an accused instrumentality with anything other than the

construed claims, including purported prior art or other companies' commercial products. *See,*

*e.g., Optis Wireless Tech. v. Apple Inc.*, No. 2:19- CV-00066-JRG, Dkt. 668 at 2 (E.D. Tex. Aug.

9, 2021) (precluding defendant "from arguing or introducing evidence as to practicing the prior

art, or from comparing the accused products to anything other than the construed claims"); *Intell.*

*Ventures II LLC v. FedEx Corp.*, No. 2:16- CV-00980-JRG, 2018 WL 10638138, at *3 (E.D.

Tex. Apr. 26, 2018) (precluding defendant from comparing accused systems and methods to any

commercial embodiments or prototypes of the asserted patents and holding "that the only proper

comparison is between the accused products and the elements of the Asserted Claims"); *Solas*

*OLED Ltd. v. Samsung Display Co., Ltd.*, No. 2:19-cv-152-JRG, Dkt. 279 at 3 (E.D. Tex. Sep.

30, 2020) (precluding evidence and argument based on Samsung's "patents and patent

applications"); *Smartflash LLC v. Apple Inc.*, No. 6:13-CV-447-JRG-KNM, 2015 WL 11089593,

at *1 (E.D. Tex. Jan. 29, 2015) (precluding defendant from "presenting arguments or opinions

that compare or contrast the accused products to smart card or commercial embodiments").

Any alleged value from these types of arguments would be residual and vastly

outweighed by their potential risk for confusing and misleading the jury about the proper issues

for resolution, unfairly prejudicial to SVVTI, and a waste of Court time and resources. *See* Fed.

R. Evid. 401-403. Defendant and its expert should be limited to presenting true noninfringement

arguments (i.e., proper comparisons between the accused instrumentalities and the construed

claims), not backdoor invalidity arguments like practicing the prior art or legal irrelevancies like practicing unasserted patents.

**IV.    Any reference to dropped claims, theories, patents, or accused products.**

In this case, as in most patent cases, the parties have whittled down their case for trial by narrowing the asserted claims and theories—including through voluntary efforts to streamline. Dropped claims, theories, patents, or accused products are irrelevant to the case before the jury. Moreover, introduction of dropped claims, theories, patents, or accused products would unnecessarily confuse the issues before the jury, force SVVTI to have to explain to the jury the complexities of litigation strategy and claim narrowing, and penalize SVVTI for streamlining its case, all while having no probative value for the issues remaining for trial. Indeed, Courts have often excluded *in limine* reference to dropped claims, theories, patents, or accused products.[8] Therefore, references to dropped claims, theories, patents, or accused products should be excluded under Fed. R. Evid. 402 and 403.

**V.    Any argument, evidence, testimony, reference, or suggestion that SVVTI has not asserted its patents against other entities, including Defendant's suppliers**

Defendant should be precluded from making arguments or assertions that SVVTI has not filed suit or asserted its patents against other companies, including Defendant's suppliers.  "The absence of assertion is not probative of any issue." *Acorn v. Samsung*, No. 2:19-CV-00347-JRG (E.D. Tex. Apr. 30, 2021), Dkt. No. 331 at 10 (granting motion precluding defendant from

---

[8] *E.g., Huawei Tech. Co. Ltd. v. Verizon Comm. Inc*., 2:20-CV-00030-JRG, Dkt. 462 at 14 (E.D. Tex., Jul. 02, 2021) (granting MIL covering "[a]ny reference to dropped or unasserted/unelected claims, patents, products, invalidity contentions, or prior art"); *Solas OLED Ltd. v. Samsung Display Co., Ltd*., No. 2-19-cv-152, Dkt. 279 at 2–3 (E.D. Tex., Sept. 30, 2020) (granting MIL on "[e]vidence of no-longer-asserted claims, products, and/or non-asserted infringement theories"); *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc*., No. 2-17-cv-651, Dkt. 208 at 4 (E.D. Tex. Apr. 10, 2019) (same); *see also United Servs. Auto. Ass'n v. Wells Fargo Bank, N*.A., No. 2:18-CV-00245-JRG Dkt. 294 (E.D. Tex., Oct. 30, 2019) (granting MIL precluded from reference to dropped theories).

asserting that the plaintiff had not asserted the patents against other manufacturers). Also, any probative weight of arguments directed to SVVTI's non-assertion of patents against companies other than Defendant is outweighed by the prejudicial effect they would have on SVVTI, as well as the risk of misleading and confusing the jury about the issues to be resolved at trial. *See* Fed. R. Evid. 401-403. Such evidence and argument should therefore be excluded.


DATED: March 7, 2024                    Respectfully submitted,

                                        /s/*Robert D. Katz*
                                        Robert D. Katz
                                        Texas Bar No. 24057936
                                        KATZ PLLC
                                        6060 N. Central Expressway, Suite 560
                                        Dallas, TX 75206
                                        214-865-8000
                                        888-231-5775 (fax)
                                        rkatz@katzfirm.com

                                        **ATTORNEY FOR PLAINTIFF**
                                        **SVV TECHNOLOGY INNOVATIONS INC.**

# EXHIBIT A

Redacted in Entirety

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **SVV TECHNOLOGY INNOVATIONS INC.** | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **Civil Action No.  6:22-cv-00639-ADA** |
| **v.** | § | **Civil Action No.  6:22-cv-00640-ADA** |
| | § | **Civil Action No.  6:22-cv-00641-ADA** |
| **ACER INC.** | § | |
| | § | **JURY DEMANDED** |
| *Defendant.* | § | |
| | § | |

**PLAINTIFF SVV TECHNOLOGY INNOVATIONS INC.'S
<u>FIRST SET OF INTERROGATORIES (NOS. 1-12) TO DEFENDANT</u>**

Pursuant to Federal Rule of Civil Procedure 33, SVV Technology Innovations Inc. ("SVVTI" or "Plaintiff"), plaintiff in the above-entitled and numbered civil action, hereby requests that Defendant Acer Inc. ("Acer" or "Defendant") answer the following interrogatories, under oath and in writing.

<u>**DEFINITIONS**</u>

1.      The terms "Acer," "Defendant," "You," and/or "Your" means Acer Inc. and/or all of their past or present predecessors, successors, corporate parents, affiliated companies or corporations, divisions, departments, direct or indirect subsidiaries, officers, directors, employees, principals, agents, attorneys, servants, representatives, and all other persons acting, or purporting to act, on its behalf or over whom Defendant has control.

2.      The term "SVVTI" means SVV Technology Innovations Inc., and/or all of its officers, directors, employees, principals, agents, attorneys, servants, representatives, and all other persons acting, or purporting to act, on its behalf or over whom SVV Technology Innovations Inc has control.

3.    The terms "Communication" or "Communications" include any transfer or exchange between two or more persons of any information, whether by written, electronic, computer or oral means, including, but not limited to, conversations, meetings, telephone calls, correspondence, e-mails, internet communications, faxes, telegrams, telexes, text messages, voicemails, cables, and/or memoranda.

4.    The terms "Relating," "Relate," "Concern," or "Concerning" mean referring to, mentioning, having any relationship to, pertaining to, evidencing or constituting evidence of the subject matter of the request.

5.    The terms "Document" and "Documents" include, without limitation, any written, recorded, graphic or printed matter, in whatever form, whether printed and/or produced by hand or any other process and specifically includes (1) all originals, all copies or drafts, and (2) originals, all copies or drafts on which appear any marks, notations, notes, or writings placed thereon after the document was first created, printed, typed or recorded, however produced or reproduced.  The terms "Document" or "Documents" also specifically includes electronically stored information, including e-mails, writings, drawings, graphs, charts, photographs, sound recordings, images and other data or data compilations stored in any medium from which information can be obtained.

By way of example and without limitation, the terms "Document" or "Documents" include Power Point presentations and/or slides, Excel spreadsheets, letters, telegrams, memoranda, writings, circulars, monographs, bulletins, manuals, speeches, audio and videotapes, drawings, blueprints, recordings, books, accounts, journals, reports, agreements, telegrams, telexes, cables, indices, diagrams, projections, advertising literature, brochures, pamphlets, diaries, forecasts, photographs, recordings, graphs, notes, notebooks, charts, minutes, notes or

recordings of meetings, documents distributed at, generated for or as a result of meetings, lists of person attending meetings, records, notes, reports and/or summaries of interviews, conversations, telephone calls, conferences, investigations or negotiations, opinions or reports of consultants, appraisals, press releases, newspaper articles, mailing lists, contracts, drafts, calendars, day-timers, datebooks, messages, letters of credit, financial statements, invoices, statements of account, receipts, promissory notes, security agreements, deeds of trust, instruments purporting to grant or evidencing any security interest or line, loan agreements, credit and debit memoranda, cancelled checks and drafts (both front and back), check stubs, securities, ledgers, computer printouts, computer electronic messages e-mail messages, correspondence, communications of any nature, summaries of records of conversations or conferences, reports and data sheets, specifications, sketches, minutes or reports and/or summaries or interviews, reports and/or summaries of investigations, prior art searches and results thereof, including discussions or analysis thereof, opinions or reports of consultants or consulting engineers, letters to the trade, and any tangible things within the scope of Federal Rule of Civil Procedure 34(a)(1).

6. The term "Complaint" as used herein means the latter of the "Plaintiff's Complaint" filed by Plaintiff on June 21, 2022 in this case, or, if a subsequently-filed amended complaint has been filed, the most recent version of any subsequent amended complaint filed by the Plaintiff in this case.

7. The term "LED" as used herein means a single light-emitting diode or a component comprising an array of light-emitting diodes, including, without limitation, components using multiple LED chips bonded to a single substrate such as "chip on board" LEDs.

8.     The term "Accused Products" shall mean any devices, or categories of devices, identified in any (1) complaint (including amended complaints) or (2) infringement contentions (including supplemental infringement contentions).  The term "Accused Products" (or "Accused Product" in the singular) shall also include all successor and predecessor devices.  Plaintiff specifically does not include requests for discovery related to any of the Defendant's products existing exclusively prior to six years before the filing of the Original Complaint in this action.

9.     The term "the Patents-in-suit" refers to United States Patent Nos. 8290318; 8740397; 9678321; 9880342; 10269999; 10439088; 10439089; 10613306; 10627562; 10797191; 10838135; 10868205; 11276795 and any other patents identified in Plaintiff's complaints (including amended complaints).


## INSTRUCTIONS

1.     For purposes of interpreting or construing the scope of these interrogatories, the terms used shall be given their most expansive and inclusive interpretation. This includes, without limitation, the following:

    a.     Construing the singular form of any word to include the plural and the plural form to include the singular;

    b.     Construing the past tense of the verb to include the present tense and the present tense to include the past tense;

    c.     Construing the masculine form to include the feminine form;

    d.     Construing the term "Date" to mean the exact day, month and year if ascertainable; if not, the closest approximation that can be made by means of relationship to other events, locations or matters;

f.      The terms "Person" or "Persons" include natural persons, groups of natural persons acting in collegial capacity (e.g., a committee or council), corporations, partnerships, associations, joint ventures, and any other incorporated or unincorporated business, governmental, public, social or legal entity.  A reference to any person or entity shall include, when applicable, its parent and subsidiary companies, divisions, groups, partners, general partners, limited partners, joint venturers, controlled persons, controlling persons, shareholders, officers, directors, employees, servants, agents, representatives, principals, privies or other persons acting on its behalf;

g.      Construing the term "Identify" or "Identity" to mean, with respect to a person, to set forth the person's name, employer, job title, home and business addresses, home and business telephone numbers, and a brief description of his or her relationship, if any, with the parties to this action, including dates of employment if the person is or was an employee of Defendants;

h.      Construing the term "Identify" or "Identity" to mean, with respect to a contact, meeting, communication or transaction, to set forth its date, location, nature, purpose, each person present, each person and/or entity involved, each person with knowledge of it and each document relating to it;

i.      Construing the term "Identify" or "Identity" to mean, with respect to an intellectual property license, to set forth a description of the technology

licensed; the time period of the license; whether the license is a cross license; whether the license was entered into as part of the settlement of litigation; the royalty rate; a description of the royalty base to which that rate is applied; the Bates number, if applicable, of each such license; the amount of license payments for each license already made and the basis for determining future license payments you anticipate being obligated to make; and all Documents reflecting, and all Persons with knowledge of, facts relevant to such licenses.

j.      Construing the term "Identify" or "Identity" to mean (regardless of whether or not any claim of privilege is asserted), with respect to a document, to set forth the following information:

(a)      Its nature (e.g., letter, memorandum, report, etc.);

(b)      The date it bears or, if undated, the date it was written or created;

(c)      The identity of the person(s) who wrote or created it;

(d)      The identity of the person(s) who received it;

(e)      Its file number or other identifying mark or code;

(f)      Its general subject matter;

(g)      Its present or last known location; and

(h)      Its custodian.

2.      Each interrogatory solicits all information available to Defendants or obtainable by Defendants from its employees, agents, attorneys or representatives.

3.      To the extent that you may produce any documents in response to any interrogatory pursuant to Fed. R. Civ. P. 33(d), please specify the records from which the answer

may be derived or ascertained in sufficient detail to permit Plaintiff to locate and to identify the particular records form which the answer may be ascertained.

4.      With respect to any document or information which you withhold, do not disclose, or exert a claim of privilege of non-disclosure, a statement shall be provided by your counsel which:

        a.      states the nature of the claim of non-disclosure or privilege;

        b.      states the names(s) of the author(s) of the document;

        c.      states the name(s) of the person(s) to whom the document was addressed and any other person(s) to whom the document was sent;

        d.      states the date of the document or, if no date appears, the date(s) on which it was prepared, sent or received;

        e.      states the number of pages, attachments and appendices of the document;

        f.      describes generally the nature and subject matter of the document; and

        g.      states the name of the person(s) who has (have) custody of the documents.

5.      Unless otherwise stated, the time frame for these interrogatories is from June 21, 2016, to the present.  Interrogatories involving prior art, Your defenses, and the date of the hypothetical negotiation are not temporally limited.

6.      These interrogatories shall be deemed to be continuing so as to require prompt, further and supplemental response if you discover additional documents or information that should have been included in response to these requests after the time of initial response.

7.      Unless otherwise indicated, the use in these discovery requests of the name of any party, person or business organization shall specifically include all agents, employees,

shareholders, owners, officers, directors, joint ventures, representatives, attorneys and all other persons acting on behalf of the subject party, person or business organization.

8.      In each instance where you deny knowledge or information sufficient to answer an interrogatory, please set forth the name and address of each person, if any, who is known by you to have such knowledge.

9.      In each instance where you answer an interrogatory on information and belief, please set forth the basis for such information and belief.

10.     Each answer should be preceded by a reiteration of the full Interrogatory to which it responds.

11.     In each instance you choose to answer an interrogatory by referring to a specific document or record, please provide sufficient detail to permit the requesting party to readily locate and identify the document(s) from which the answer is to be ascertained.

## INTERROGATORIES

**INTERROGATORY NO. 1:**  For each of the Accused Products, please state separately, on a monthly basis or the shortest interval for which records are kept, the total quantity sold, the costs, expenses on an itemized basis, gross profit margin, operating profit margin, incremental profit margin, and revenues attributable to sales of the Accused Products, and Identify Documents, if any, used to respond to this Interrogatory.

**INTERROGATORY NO. 2:**  Disclose the manufacturer and manufacturer's part number for the display panels used in each of the Accused Products.  If, and to the extent that you do not track or maintain the requested information regarding the display panels and it is otherwise unavailable to you for an Accused Product, you are requested to provide the supplier and supplier's part number for the parts or devices containing the display panels for which such information is tracked, maintained, or is otherwise available.

**INTERROGATORY NO. 3:**  Please Identify and describe all intellectual property licenses, settlement agreements, covenants-not-to-sue, technology transfer agreements or any other agreements or contracts providing any rights to patents or technologies entered into by You, or of which You are aware, that are currently in effect or have been in effect at any time in the past fifteen years, that involve LED backlit (or sidelit) LCD display panels; quantum dot technology; or which Relate to the functions and features set forth in Plaintiff's infringement allegations or technology that You contend is comparable to a license that You and Plaintiff would have agreed to in a hypothetical negotiation in this case.

**INTERROGATORY NO. 4:**  State in detail all facts that support or refute Your fourth and seventh affirmative defenses as pleaded in your answer filed September 6, 2022, as well as any new defenses pleaded in any amendments or supplements thereto.

**INTERROGATORY NO. 5:**  For any claim of the Patents-in-Suit that You contend is invalid, please describe in detail all facts that support or refute Your contention, including an identification of all prior art reference(s) that You contend invalidate the patent and an explanation of how each claim element is found in the prior art reference(s).

**INTERROGATORY NO. 6:**  Separately for each asserted claim of the Patents-in-Suit and each of the Accused Products, please identify and describe all facts (including the technical and financial details) Related to any acceptable non-infringing alternative(s) or design around(s) available to You, of which You are aware, which You are presently investigating, or which You may rely upon.

**INTERROGATORY NO. 7:**   State in detail all facts that support or refute Your contention that You do not infringe, directly or indirectly, any asserted claim of the Patents-in-Suit, include an identification of the claim element(s) that You allege are not included in each Accused Product, and explain in detail why each such element is not satisfied (both literally and under the doctrine of equivalents) for each claim and each Accused Product.

**INTERROGATORY NO. 8:** For each of the Accused Products, please describe in detail all facts Relating to financial information Related to revenues and expenses that are attributable to what you contend is the "smallest saleable unit" and the apportionment of profits between the "smallest saleable units" and the other components of the Accused Products.

**INTERROGATORY NO. 9:** For each of the Accused Products, please state separately, the date when You first offered for sale, sold, or advertised each Accused Product to customers and/or the public, and, if You have stopped selling the Accused Product, the date when You last sold the Accused Product.

**INTERROGATORY NO. 10:** For each of the Accused Products, identify and explain all facts Related to any differences between each Accused Product that You contend is material to the asserted claims of the Patents-in-Suit, that You may rely upon to support any assertion or finding of non-infringement, or that You may rely upon to refute any infringement assertion by Plaintiff in this matter.  Your answer should include the identification of any differences between the display panels used in each Accused Product that you contend is material to the Patents-in-Suit and any differences that You contend make it so that any one Accused Product is not representative of any other Accused Product.

**INTERROGATORY NO. 11:** For each of the Accused Products, identify all products that are or were ever offered for sale by You that contain the same display panels.  If, and to the extent that You do not track or maintain the requested information regarding the display panels for an Accused Product, You are requested to identify the parts or devices containing the display panels for which such information is tracked, maintained, or is otherwise available.

**INTERROGATORY NO. 12:**  State the full and complete factual and legal basis for any claim that Defendant's infringement of the Patent-in-suit was not willful and that Plaintiff is not entitled to enhanced damages, including, but not limited to, identifying any legal advice or legal opinion relied on or commissioned by Defendant.

DATED: March 22, 2023                    Respectfully submitted,

                                         **SVV TECHNOLOGY INNOVATIONS, INC.**,
                                         By its attorneys,

                                         *Robert D. Katz*
                                         Robert D. Katz
                                         Texas Bar No. 24057936
                                         KATZ PLLC
                                         6060 N. Central Expressway, Suite 560
                                         Dallas, TX 75206
                                         214,865,8000 (Telephone)
                                         888.231.5775 (Facsimile)
                                         rkatz@katzfirm.com


## CERTIFICATE OF SERVICE

I hereby certify that on the date shown above a copy of the foregoing was served on all

counsel of record via electronic mail.


                                         /s/ *Robert D. Katz*
                                         Robert D. Katz

# EXHIBIT C

Redacted in Entirety

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| SVV TECHNOLOGY INNOVATIONS INC. | § § § | |
| *Plaintiff*, | § § | |
| v. | § § § | Civil Action No.  6:22-cv-00639-ADA<br>Civil Action No.  6:22-cv-00640-ADA<br>Civil Action No.  6:22-cv-00641-ADA |
| ACER INC. | § § | **JURY DEMANDED** |
| *Defendant*. | § § | |

## PLAINTIFF'S RULE 30(b)(6) DEPOSITION NOTICE TO DEFENDANT

In accordance with Federal Rule of Civil Procedure 30(b)(6), please take notice that SVV Technology Innovations Inc. ("SVVTI" or "Plaintiff"), by and through its counsel, will take the oral deposition of Defendant Acer Inc. ("Acer" or "Defendant") commencing September 14, 2023, at 9:00 am CT, and continuing from day to day until completed at Katz PLLC, 6060 N. Central Expressway, Suite 500, Dallas, Texas 75206 or at a different time and/or place, if the parties have so agreed.  The deposition will be conducted before an officer authorized to administer oaths. The deposition will be recorded stenographically, and/or through audio, and may be videotaped.

.  Plaintiff will examine Defendant's representative on the matters in the numbered paragraphs set forth below in Schedule A. In accordance with Federal Rule of Civil Procedure 30(b)(6), Defendant is to designate one or more persons to testify on Defendant's behalf with respect to the matters described in Schedule A and set forth, for each individual designated, the matters on which the individual will testify, no later than five (5) business days before the depositions.

NOTICE IS FURTHER GIVEN that we reserve the right to conduct this deposition utilizing the secure web-based deposition option afforded by video teleconferencing (VTC) services or telephonically to provide remote/virtual access for those parties wishing to participate in the deposition via the internet and/or telephone. Also take notice that we reserve the right to record the deposition either by stenographic means by a court reporter certified to record depositions or a digital reporter utilizing state-of-the-art digital recording equipment. Both the court reporter and digital reporter are authorized to administer the oath and serve as the deposition officer. Take note that the deposition officer may also be remote and out of the presence of the deponent via one of the options above for the purposes of providing the oath/affirmation to the deponent and capturing the proceeding. We further reserve the right to utilize the following: (1) Record the deposition utilizing audio or video technology; (2) Instant visual display such that the reporter's writing of the proceeding will be available to all who are a party to this proceeding to request and receive it in realtime; (3) Exhibit Capture (picture-in-picture) technology in which any exhibit reviewed by the deponent during the deposition can be captured visually; and (4) To conduct this deposition utilizing a paperless exhibit display process called Exhibit Share or a similar paperless virtual display platform. The parties are advised that in lieu of a paper set of exhibits they may be provided and displayed digitally to the deposition officer, deponent, parties and counsel. The exhibits will be compiled by the deposition officer for the purposes of exhibit stamping, and ultimate production of the final certified transcript. Please contact the noticing attorney at least five (5) calendar days prior to the deposition to advise that it is your desire to appear via this remote participating means so that the necessary credentials, call-in numbers, firm name, email address, services, testing and information, if necessary, can be arranged and provided to you prior to the proceeding(s).

## <u>DEFINITIONS</u>

1.      The terms "Acer", "Defendant," "You," and/or "Your" means Acer Inc. and/or all of their past or present predecessors, successors, corporate parents, affiliated companies or corporations, divisions, departments, direct or indirect subsidiaries, officers, directors, employees, principals, agents, attorneys, servants, representatives, and all other persons acting, or purporting to act, on its behalf or over whom Defendant has control.

2.      The term "SVVTI" means SVV Technology Innovations Inc., and/or all of its officers, directors, employees, principals, agents, attorneys, servants, representatives, and all other persons acting, or purporting to act, on its behalf or over whom SVV Technology Innovations Inc has control.

3.      The terms "Communication" or "Communications" include any transfer or exchange between two or more persons of any information, whether by written, electronic, computer or oral means, including, but not limited to, conversations, meetings, telephone calls, correspondence, e-mails, internet communications, faxes, telegrams, telexes, text messages, voicemails, cables, and/or memoranda.

4.      The terms "Relating," "Relate," "Concern," or "Concerning" mean referring to, mentioning, having any relationship to, pertaining to, evidencing or constituting evidence of the subject matter of the request.

5.      The terms "Document" and "Documents" include, without limitation, any written, recorded, graphic or printed matter, in whatever form, whether printed and/or produced by hand or any other process and specifically includes (1) all originals, all copies or drafts, and (2) originals, all copies or drafts on which appear any marks, notations, notes, or writings placed thereon after

the document was first created, printed, typed or recorded, however produced or reproduced.  The terms "Document" or "Documents" also specifically includes electronically stored information, including e-mails, writings, drawings, graphs, charts, photographs, sound recordings, images and other data or data compilations stored in any medium from which information can be obtained.

By way of example and without limitation, the terms "Document" or "Documents" include Power Point presentations and/or slides, Excel spreadsheets, letters, telegrams, memoranda, writings, circulars, monographs, bulletins, manuals, speeches, audio and videotapes, drawings, blueprints, recordings, books, accounts, journals, reports, agreements, telegrams, telexes, cables, indices, diagrams, projections, advertising literature, brochures, pamphlets, diaries, forecasts, photographs, recordings, graphs, notes, notebooks, charts, minutes, notes or recordings of meetings, documents distributed at, generated for or as a result of meetings, lists of person attending meetings, records, notes, reports and/or summaries of interviews, conversations, telephone calls, conferences, investigations or negotiations, opinions or reports of consultants, appraisals, press releases, newspaper articles, mailing lists, contracts, drafts, calendars, day-timers, datebooks, messages, letters of credit, financial statements, invoices, statements of account, receipts, promissory notes, security agreements, deeds of trust, instruments purporting to grant or evidencing any security interest or line, loan agreements, credit and debit memoranda, cancelled checks and drafts (both front and back), check stubs, securities, ledgers, computer printouts, computer electronic messages e-mail messages, correspondence, communications of any nature, summaries of records of conversations or conferences, reports and data sheets, specifications, sketches, minutes or reports and/or summaries or interviews, reports and/or summaries of investigations, prior art searches and results thereof, including discussions or analysis thereof,

opinions or reports of consultants or consulting engineers, letters to the trade, and any tangible things within the scope of Federal Rule of Civil Procedure 34(a)(1).

6.     The term "Complaint" as used herein means the latter of the "Plaintiff's Complaint" filed by Plaintiff on June 21, 2022 in this case, or, if a subsequently-filed amended complaint has been filed, the most recent version of any subsequent amended complaint filed by the Plaintiff in this case.

7.     The term "LED" as used herein means a single light-emitting diode or a component comprising an array of light-emitting diodes, including, without limitation, components using multiple LED chips bonded to a single substrate such as "chip on board" LEDs.

8.     The term "Accused Products" shall mean any devices, or categories of devices, identified in any (1) complaint (including amended complaints) or (2) infringement contentions (including supplemental infringement contentions).  The term "Accused Products" (or "Accused Product" in the singular) shall also include all successor and predecessor devices.  Plaintiff specifically does not include requests for discovery related to any of the Defendant's products existing exclusively prior to six years before the filing of the Original Complaint in this action.

9.     The term "the Patents-in-suit" refers to United States Patent Nos. 8290318; 8740397; 9678321; 9880342; 10269999; 10439088; 10439089; 10613306; 10627562; 10797191; 10838135; 10868205; 11276795 and any other patents identified in Plaintiff's complaints (including amended complaints).

## **INSTRUCTIONS**

1.     For purposes of interpreting or construing the scope of these requests for production, the terms used shall be given their most expansive and inclusive interpretation. This includes, without limitation, the following:

a.      Construing the singular form of any word to include the plural and the plural form to include the singular;

b.      Construing the past tense of the verb to include the present tense and the present tense to include the past tense;

c.      Construing the masculine form to include the feminine form;

d.      Construing the term "Date" to mean the exact day, month and year if ascertainable; if not, the closest approximation that can be made by means of relationship to other events, locations or matters;

f.      The terms "Person" or "Persons" include natural persons, groups of natural persons acting in collegial capacity (e.g., a committee or council), corporations, partnerships, associations, joint ventures, and any other incorporated or unincorporated business, governmental, public, social or legal entity.  A reference to any person or entity shall include, when applicable, its parent and subsidiary companies, divisions, groups, partners, general partners, limited partners, joint venturers, controlled persons, controlling persons, shareholders, officers, directors, employees, servants, agents, representatives, principals, privies or other persons acting on its behalf;

## **TOPICS**

1.  For each of the Accused Products made, offered for sale, sold, or imported in the United States, for each quarter from six years prior to the filing of the original complaint through the present (or by year if the information is not available by quarter), the sales, fixed and variable costs and expenses associated with its manufacture and sale, including but not limited to, the identity, content, and interpretation of documents sufficient to show the same. If information is not available by individual product, then the request applies to

Defendant's unconsolidated product line profit and loss statements reflecting the financial performance of the Accused Products.

2.  The sourcing and distribution of the Accused Products, and the dates on which Defendant first made, used, imported and/or sold the Accused Products.

3.  The identity of the products and companies that compete with Defendant, the market which they are part of, and the market share of the competitors in the market.

4.  The facts relating to the profitability, commercial success, and popularity of each Accused Product including without limitation:

    a.  total historical sales and profits;

    b.  financial projections including sales forecasts;

    c.  market share analyses and market assessments;

    d.  analyst reviews;

    e.  business plans;

    f.  the identification of any facts contributing to such profitability, commercial success, and popularity;

    g.  the manner in which you measure or analyze whether the Accused Product are successful; and

    h.  information concerning customer preferences and satisfaction including customer surveys, customer reviews and market surveys.

5.  Discussions between Plaintiff and Defendant involving potential licensing.

6.  Your corporate structure as it relates to oversight or control over the product lines involving the Accused products.

7.  Information relating to the control of Acer America Corporation by its direct or indirect owner(s) and the authority for Acer America Corporation, to sell or import the Accused Products.

8.  The extent to which Acer America Corporation has authority to act on behalf of Defendant, and vice versa.

9.  The certifications of the Accused Products involving Underwriters Laboratories and the rules of the United States Federal Communications Commission.

10. The activities involving the preparation of the Accused Products for sale into the United States.

11. The warranty support for the Accused Products.

12. Regarding the Plaintiff's Patents-in-Suit, any information that would affect or would have affected, either positively or negatively, the reasonable royalty that would have been negotiated by Defendant for its use.

13. The identity, content, and interpretation of: (a) any patent license produced or identified by Defendant in this case, (b) any patent license agreements executed within the past ten years to which you are a party, (c) any patent license that pertains to LED backlit (or sidelit) LCD display panels; quantum dot technology, (d) any patent license that pertains to any aspect of the Accused Products of which you are aware, and (f) any patent license pools that the Defendant has invested in directly or indirectly.

14. Your policies and procedures regarding entering into patent licenses.

15. The procedures and policies that You follow in order to avoid patent infringement.

16. The facts and circumstances surrounding the negotiation and signing of any patent licenses, including without limitation the persons involved in the negotiation, the persons involved

in the ultimate decision to execute the license, the persons involved in the execution of the license, the terms, nature and scope of the licenses, whether the licenses contemplate lump sum payments or running royalties, the stated or implied royalty rate, the duration of the licenses and whether the licenses are restricted in any way, whether Defendant assumed or admitted that infringed the patent, whether the Defendant assumed or admitted that the patent was valid, whether Defendant agreed or refused to mark its products with the patent numbers, and the identity and location of documents sufficient to show the foregoing.

17. The actual or anticipated cost of designing around the Patents-in-Suit including without limitation, the identification of the modifications Defendant would make to its products to design around the Patents-in-Suit; the costs of developing such modifications; the time required to develop such modifications; the amount of man-hours necessary to design around the Patents-in-Suit, whether the modifications would have any potential backward compatibility issues and, if so, how they would be addressed; whether the modifications had or would have any impact (however measured ) on the performance of the products and if so, disclose each impact, the costs that such modifications would add to any product that included the modifications, the cost of equipment, materials, manpower and facilities needed to design around, any loss of sales or loss of market share from such a design around, and the commercial acceptably of such a design around in the marketplace.

18. All efforts made by Defendant to design around or otherwise avoid infringing the Patents-in-Suit, including discussions involving your suppliers regarding the avoidance of infringement.

19. All facts relating to the identification, availability, acceptability, and cost of any non-infringing alternatives to the apparatuses claimed in the Patents-in-suit, including without limitation.

a.      Your use and consideration of implementing any such alternatives, including discussions involving your suppliers or potential suppliers;

b.      the specific alterations you would make to each Accused Product to effectuate such alternative(s);

c.      the specific claim limitations of the Patents-in-Suit that would be infringed without the alternatives;

d.      the costs associated with developing and implementing each alternative; and

e.      the steps and time required to develop and implement each alternative.

20. Your knowledge of the Patents-in-Suit, including but not limited to: (i) how and when such awareness came about, (ii) any analysis performed by You or for You to determine whether You infringe the Patents-in-Suit, whether the Patents-in-Suit are valid or enforceable, and/or whether You should seek to obtain a license to the Patents-In-Suit, (iii) when any such analysis was performed, and (iv) who were the persons involved therein, and the foundation of documents that discuss, refer to, or evince the same.

21. The factual basis for Your contention that You have not willfully or deliberately infringed the Patents-in-Suit, including (without limitation):

a. any and all efforts by You, upon becoming aware of the Patents-in-Suit, to investigate the scope of the Patents-in-Suit and to form a good-faith belief that the Patents-in-Suit were invalid, not infringed by You, or unenforceable;

b. the identity of any persons, agencies, or business entities that formed, or were involved in forming, the good-faith belief that the Patents-in-Suit was invalid, not infringed by You, or unenforceable;

c. the time period in which the good-faith belief that the Patents-in-Suit were invalid, not infringed by You, or unenforceable was formed;

d. the manner in which the good-faith belief that the Patents-in-Suit were invalid, not infringed by You, or unenforceable was formed;

e. whether Defendant has a freedom to operate opinion from a patent attorney concerning the Accused Products and whether Defendant has a regular practice of obtaining a freedom to operate opinion from a patent attorney concerning its products; and

f. whether Defendant searched for patents owned by others that might be relevant to the Accused Products and whether Defendant has a regular practice of searching for patents owned by others that might be relevant to its products; and

g. the foundation of documents that discuss, refer to, or evince the same.

22. All facts relating to financial information related to revenues and expenses that are attributable to the "smallest saleable units" and the apportionment of profits between the "smallest saleable units" and the other components of the Accused Products.

23. Your answers, objections, or responses to Plaintiff's discovery requests.

The identification, existence, interpretation, foundation, and production of documents and things relating to the above topics.

DATED: September 1, 2023                    Respectfully submitted,

                                            **SVV TECHNOLOGY INNOVATIONS, INC.**,
                                            By its attorneys,

                                            *Robert D. Katz*
                                            Robert D. Katz
                                            Texas Bar No. 24057936
                                            KATZ PLLC
                                            6060 N. Central Expressway, Suite 560
                                            Dallas, TX 75206
                                            214,865,8000 (Telephone)
                                            888.231.5775 (Facsimile)
                                            rkatz@katzfirm.com


<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the date shown above a copy of the foregoing was served on all

counsel of record via electronic mail.


                                            /s/ *Robert D. Katz*
                                            Robert D. Katz

# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**



COURT REPORTING

LEGAL VIDEOGRAPHY

VIDEOCONFERENCING

TRIAL PRESENTATION

MOCK JURY SERVICES

LEGAL TRANSCRIPTION

COPYING AND SCANNING

LANGUAGE INTERPRETERS

SVV TECHNOLOGY INNOVATIONS
INC.

       Plaintiff,

              Civil Action No. 6:22-cv-00639-ADA
v.             Civil Action No. 6:22-cv-00640-ADA
              Civil Action No. 6:22-cv-00641-ADA
ACER INC.

       Defendant.
_____





**REMOTE STREAMING DEPOSITION OF**

**MARC HO**

**TAKEN ON**
**THURSDAY, OCTOBER 5, 2023**
**8:06 P.M.**

**NEW TAIPEI CITY, TAIWAN**



(800) 528-3335

NAEGELIUSA.COM

**2**

1              REMOTE APPEARANCES
2
3  Appearing on behalf of the Plaintiff:
4  ROBERT D. KATZ, ESQUIRE
5  Katz, PLLC
6  6060 North Central Expressway, Suite 560
7  Dallas, Texas 75206
8  (214) 865-8000
9  (888) 231-5775 (Fax)
10  rkatz@katzfirm.com
11
12  Appearing on behalf of the Defendant:
13  JERRY CHEN, ESQUIRE
14  TechKnowledge Law Group, LLP
15  20660 Stevens Creek Boulevard, Suite 381
16  Cupertino, California 95014
17  (650) 517-5200
18  (650) 562-8054 (Fax)
19  jchen@tklg-llp.com
20
21  ALSO PRESENT:
22  Penny Chen, Chinese Interpreter
23  Tim Garrett, Videoconference Technician
24
25

**4**

1                  EXHIBITS
2  Exhibit                          Page
3
4    1    DEPOSITIION NOTICE              13
5
6    2    OJECTIONS AND SECOND SUPPLEMENTAL    16
7          RESPONSES
8
9    3    MEDIA DISK                17
10
11   4    MEDIA DISK                28
12
13   5    MEDIA DISK                29
14
15   6    MEDIA DISK                61
16
17
18
19
20
21
22
23
24
25

**3**

1            INDEX OF EXAMINATION
2                    Page
3
4  EXAMINATION BY MR. KATZ            6
5
6  EXAMINATION BY MR. CHEN           64
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**5**

1        REMOTE STREAMING DEPOSITION OF
2                  MARC HO
3                  TAKEN ON
4        THURSDAY, OCTOBER 5, 2023
5                  8:06 P.M.
6
7        THE REPORTER:  We are on the record at
8  8:06 p.m.
9        MR. KATZ:  Good morning.  Would you please
10  introduce yourself?
11        THE REPORTER:  I actually need to swear in
12  Ms. Chen --
13        MR. KATZ:  Oh, sorry.
14        THE REPORTER:  -- first.
15        MR. KATZ:  I was jumping the gun.
16        THE REPORTER:  Ms. Chen, would you please
17  raise your right hand for me?  Thank you.
18        THE INTERPRETER:  Yes.
19        THE REPORTER:  Do you affirm that you will
20  interpret today's testimony to the best of your
21  ability?
22        THE INTERPRETER:  Yes, I do.
23        THE REPORTER:  Thank you.
24        THE INTERPRETER:  Thank you.
25        THE REPORTER:  Thank you.  Mr. Ho?

54

1     A.   The warranty support would be -- the
2   warranty support was or is provided by Acer's
3   subsidiary companies locally for their clients.
4     Q.   So is it fair to say that it's just
5   handled by a different one of Acer, Inc.'s
6   subsidiaries?
7         MR. CHEN:  Objection to form.
8         THE INTERPRETER:  To my knowledge, Acer
9   America handles the warranty support by itself, but
10  it's just my personal knowledge.  If you have any
11  specific questions, I recommend you ask Acer America
12  directly.
13  BY MR. KATZ:
14    Q.   Has Acer, Inc., identified any non-
15  infringing alternatives to the apparatuses that are
16  claimed in the Patents-in-suit in this case?
17        MR. CHEN:  Objection to form.
18        THE INTERPRETER:  Okay.  The interpreter
19  will re-render the translation per Mr. Ho's request.
20  Counsel Robert, this is the interpreter.  Could you
21  please ask your question again to -- to make sure
22  the interpretation would be accurate?
23  BY MR. KATZ:
24    Q.   Has Acer, Inc., identified any non-
25  infringing alternatives to the apparatuses claimed

55

1   in the Patents-in-suit in this case?
2         MR. CHEN:  Objection to form.
3         THE INTERPRETER:  Apparatus.  What's that
4   word?  Sorry, Counsel.
5         MR. KATZ:  Oh, to -- to the --
6         THE INTERPRETER:  Oh, I -- I know -- I
7   know what you mean, equipment --
8         MR. KATZ:  Equipment.
9         THE INTERPRETER:  Devices.
10        MR. KATZ:  Okay.  Yeah.
11        THE INTERPRETER:  Okay.  Okay.  Actually,
12  the interpretation would be the same.
13        MR. KATZ:  Okay.
14        THE INTERPRETER:  The interpreter would
15  render the translation again.  Okay.  Counsel
16  Robert, I think the -- the issue is the translation
17  of identify.  Could you please use another word?
18  Identify.
19        MR. KATZ:  Found.
20        THE DEPONENT:  To my knowledge, we haven't
21  determined if our products infringed the -- the
22  accused patents or not, and also to my knowledge, we
23  are still communicating with the opposing party to
24  figure out whether our products have the
25  infringement or not.

56

1         THE INTERPRETER:  You -- you are muted.
2         MR. KATZ:  Thank you.
3   BY MR. KATZ:
4     Q.   As you sit here today, can you describe
5   any non-infringing alternative that Acer has
6   attempted or investigated?
7     A.   To my knowledge, or based upon my
8   understanding, this question is not within the scope
9   of my testimony.  So I don't think I participated in
10  our internal discussion regarding the infringement
11  topics.
12    Q.   Mr. Ho, I'm sharing my screen with you.
13  Going back to Exhibit 1 and Topic 19, I understand
14  that you've been designated on behalf of Acer, Inc.,
15  for Topic 19.  It reads, "All facts relating to the
16  identification, availability, acceptability, and
17  cost of any non-infringing alternatives to the
18  apparatuses claimed in the Patents-in-suit,
19  including, without limitation," and then it goes on
20  to list five parts.
21        Are you prepared to testify on behalf of
22  Acer, Inc., as to Topic 19 today?
23        MR. CHEN:  Objection to form.  I'd also
24  like to clarify that the witness was designated for
25  this topic subject to Acer's objections which

57

1   include the fact that the topic calls for legal
2   conclusions and also calls for expert testimony.
3   The witness here is only designated to testify with
4   respect to facts regarding Acer products.
5         I want to clarify that the accused
6   products are only a subset of Acer products.
7   Presumably, the other Acer monitor products that are
8   not accused are, presumably, not infringing, and the
9   witness is presented to testify about those other
10  non-infringing products based on the accusations of
11  the plaintiff.
12        So the witness is here to testify,
13  factually, about those other products, but the
14  plaintiff is going to have to identify those other
15  products outside of what was accused in this case.
16        THE DEPONENT:  Understood.
17  BY MR. KATZ:
18    Q.   And Mr. Ho what is the answer to my
19  question?
20    A.   As I mentioned earlier, my -- our products
21  did not do any modification or readjustment as a
22  result of this suit.
23    Q.   Okay.  And are you able to describe any
24  facts relating to any non-infringing alternatives
25  that Acer, Inc., has attempted with respect to the

58

1  Patents-in-suit in this case?
2        MR. CHEN:  Objection to form, the same as
3  -- objection as before.
4        THE DEPONENT:  As to the products accused
5  by the opposing party, we did not do any
6  modification.
7  BY MR. KATZ:
8     Q.   And one additional question on that, are
9  you able to describe or identify any facts involving
10  any investigation that Acer, Inc., considered
11  involving non-infringing alternatives relating to
12  the Patents-in-suit in this case?
13        MR. CHEN:  Objection to form.  Objection
14  to the extent that it calls for attorney-client
15  privileged communications or work product.  I'd also
16  like to object that the witness was presented for
17  this topic subject to Acer's objections which
18  include any objections that the topic may call for
19  legal conclusions or expert opinion testimony.
20        The witness was presented to testify
21  regarding Acer products, which included both accused
22  products as well as non-accused products, which are
23  presumably non-infringing alternatives to the
24  accused products. So the examining attorney can ask
25  questions about non-accused products and the witness

59

1  is prepared to testify about those, as well, to the
2  best of his knowledge.
3        MR. KATZ:  If you're finished coaching the
4  witness, maybe the witness could answer now.
5        THE INTERPRETER:  So this is from Mr. Ho.
6        THE DEPONENT:  My understanding of the
7  counsel's question, through I, myself, listening to
8  his question, is kind of different from the
9  interpreter's translation.
10        THE INTERPRETER:  So the -- Mr. Ho
11  requests -- requested the interpreter to re-render
12  the translation, and because of this may the
13  interpreter ask Counsel Robert to ask your question
14  again?
15        MR. KATZ:  Madam Court Reporter, please
16  read my question back.
17        THE REPORTER:  Stand by.
18        THE INTERPRETER:  Michelle, can you read
19  it instead of playing it?  Because based upon the
20  previous experience, when you replay it, I cannot
21  hear it clearly.
22        THE REPORTER:  Okay.  Give me just one
23  second. I have to go back and find the question.
24        THE INTERPRETER:  Thank you.
25        (WHEREUPON, the record was read back.)

60

1        MR. CHEN:  Same objection as before,
2  objection to form.
3        THE INTERPRETER:  Mr. Ho interpreted the
4  question and asked me if the interpreter agrees with
5  his interpretation or not.  The interpreter does not
6  agree with Mr. Ho's interpretation.  Shall the
7  interpreter try to explain the question to Mr. Ho in
8  Chinese?
9        MR. KATZ:  Go ahead.
10        THE INTERPRETER:  Thank you.
11        THE DEPONENT:  We did not conduct any such
12  investigations.
13  BY MR. KATZ:
14     Q.   Mr. Ho, there's just two other things I
15  need to ask you about and then I think we can wrap
16  this up.
17     A.   Okay.
18     Q.   Yeah.  I'm going back to Exhibit 2 and I'm
19  just going to ask you about Interrogatory number 8,
20  and Interrogatory number 8 just asks about -- I'll
21  just go ahead and read it.  "For each of the accused
22  products, please describe, in detail, all facts
23  relating to financial information relating --
24  related to revenues and expenses that are
25  attributable to what you contend is the smallest

61

1  salable unit and the apportionment of products
2  between the smallest salable units and the other
3  components of the accused products."
4        The -- the interrogatory was responded to
5  by referencing a document, and this document is for
6  Acer Product 22CV1Q BI.  So I'm now going to show
7  you this Bates number Acer 00019833.  If the
8  interpreter wants to read that, and I'll go ahead
9  and pull up the exhibit.
10        THE INTERPRETER:  Counsel, I think I just
11  need the AC -- the product number 22CV12, I missed
12  that part, but it you are going to pull up the
13  document, that would be better.
14  BY MR. KATZ:
15     Q.   So I'm now sharing my screen.  This is
16  Exhibit 6, Bates number Acer 00019833.
17        (WHEREUPON, Exhibit 6 was marked for
18  identification.)
19  BY MR. KATZ:
20     Q.   So the -- the question is based on Exhibit
21  6.  How do I use Exhibit 6 to identify the smallest
22  salable patent practicing unit?
23        MR. CHEN:  Objection to form.  Objection
24  to the extent the question calls for legal
25  conclusions or expert opinion testimony.



62

1        THE DEPONENT:  So shall I answer the
2  question?
3  BY MR. KATZ:
4     Q.  Yes, please.
5     A.  First of all, this document is what we use
6  for service maintenance.  It is the spreadsheet
7  listing the materials for product service or
8  maintenance.  So this spreadsheet does not
9  correspond to the parts for product production.
10    Q.  So in other words, Exhibit 6 is just the
11 replacement parts for purposes of repair; is that
12 correct?
13    A.  Yes.  So there is a percentage of these
14 replacement parts which are not necessarily the same
15 as those parts used for producing the products.
16    Q.  Okay.  So a different question then.  Do
17 you have an opinion as to -- or do you -- do you
18 understand any underlying facts with respect to the
19 smallest salable patent practicing unit for a 22CV1Q
20 monitor?
21       MR. CHEN:  Objection to form.  Objection
22 to the extent calls for legal conclusions or calls
23 for expert opinion testimony.  The witness is
24 presented as a fact witness and is here to testify
25 regarding facts about the Acer products.

63

1        THE INTERPRETER:  At Mr. Ho's request, the
2  interpreter is going to repeat the interpretation.
3        THE DEPONENT:  Based upon my
4  understanding, the parts which was accused by the
5  opposing party for alleged infringement, I'm not
6  sure about the name of the part.  However, Acer,
7  Inc.,does not have so in-depth knowledge about the
8  part.  We may know that in certain panels there
9  could be such component, but we would not have very
10 in-depth knowledge about the part.
11 BY MR. KATZ:
12    Q.  Mr. Ho, which of the components on Exhibit
13 6 would relate to back-lighting for an LCD display
14 panel?
15    A.  Based upon my understanding, the
16 information should be listed in Row 23 and Row 24.
17    Q.  Mr. Ho, do you plan to attend trial?
18       MR. CHEN:  Objection to form.  Objection,
19 calls for attorney-client privilege.  The witness
20 does not have to answer this question.
21       MR. KATZ:  I'll pass the witness.
22       MR. CHEN:  Let me go -- let's go off the
23 record and take a break for a quick second.
24       THE REPORTER:  We are off the record at
25 11:59 p.m.

64

1        (WHEREUPON, a recess was taken.)
2        THE REPORTER:  We are on the record at
3  12:04 a.m.
4  EXAMINATION
5  BY MR. CHEN:
6     Q.  Mr. Ho, this is Jerry, counsel for Acer, I
7  just have one question for you.  Previously, counsel
8  for SVV asked you regarding non-infringing
9  alternatives.  Do you know whether Acer has done any
10 investigation regarding non-infringing alternatives?
11    A.  No.
12    Q.  Let me repeat my -- can I get the question
13 and answer read back to me?
14       THE REPORTER:  Stand by.
15       (WHEREUPON, the record was played back.)
16 BY MR. CHEN:
17    Q.  Let me re-ask the question, Mr. Ho, do you
18 know whether Acer has done any investigation into
19 non-infringing alternatives?
20    A.  No.  No.
21       MR. CHEN:  Okay.  I have no further
22 questions.
23       MR. KATZ:  No further questions from the
24 plaintiff.  So having said that, plaintiff would
25 want to keep it -- keep the deposition open to

65

1  resolve a couple of disputes that came up.  So Mr.
2  Ho, we're going to keep the deposition open based on
3  conversation I've had with your counsel.
4        It doesn't mean that I don't appreciate
5  the time you've spent with us here today.  Thank
6  you.  Have a good day.
7        THE DEPONENT:  Thank you, too.
8        MR. CHEN:  All right.  Thanks, everybody.
9        MR. KATZ:  Thank you.
10       THE REPORTER:  Did we want to order?
11       THE INTERPRETER:  Thank you.
12       MR. KATZ:  Let's see.  I might need a --
13 can I get your e-mail address so I can let you know
14 tomorrow whether I need a rough on it?
15       THE REPORTER:  Of course.  Would you like
16 me to put it in the chat or just call it out?
17       MR. KATZ:  Just put it in the chat or you
18 -- you know, go ahead and call it out.  I'll write
19 it down.
20       THE REPORTER:  It's Michelle, M-I-C-H-E-L-
21 L-E at Naegeli, N-A-E-G-E-L-I USA.com.
22       MR. KATZ:  All right.  Thank you so much,
23 Michelle.
24       THE REPORTER:  And Mr. Chen, did you want
25 to order?

66

1       MR. CHEN:  I will contact you and let you
2  know what the order will be.
3       MR. KATZ:  All right.  You-all have a good
4  day.
5       THE REPORTER:  Thank you.
6       MR. KATZ:  Thanks a lot, everybody.
7       THE REPORTER:  Have a good day.
8       THE INTERPRETER:  Thank you, Michelle.
9       THE REPORTER:  We are off the record at
10  12:10 a.m.
11       (WHEREUPON, the deposition of MARC HO was
12  adjourned at 12:10 a.m.)
13
14
15
16
17
18
19
20
21
22
23
24
25

67

1                CERTIFICATE
2
3       I, Michelle Byrd, do hereby certify that I reported
4  all proceedings adduced in the foregoing matter and that
5  the foregoing transcript pages constitutes a full, true
6  and accurate record of said proceedings to the best of my
7  ability.
8
9       I further certify that I am neither related to
10  counsel or any party to the proceedings nor have any
11  interest in the outcome of the proceedings.
12
13       IN WITNESS HEREOF, I have hereunto set my hand this
14  11th day of October, 2023.
15
16
17
18
19  /S/  Michelle Byrd
20
21
22
23
24
25

68

1                CORRECTION SHEET
2  Deposition of: Marc Ho          Date: 10/05/23
3  Regarding:     SVV Technology Innovations vs. Acer Inc.
4  Reporter:    Byrd/Baker
5  _____
6  Please make all corrections, changes or clarifications
7  to your testimony on this sheet, showing page and line
8  number.  If there are no changes, write "none" across
9  the page. Sign this sheet on the line provided.
10  Page  Line  Reason for Change
11  _____  _____  _____
12  _____  _____  _____
13  _____  _____  _____
14  _____  _____  _____
15  _____  _____  _____
16  _____  _____  _____
17  _____  _____  _____
18  _____  _____  _____
19  _____  _____  _____
20  _____  _____  _____
21  _____  _____  _____
22  _____  _____  _____
23  _____  _____  _____
24         Signature_____
25              Marc Ho

69

1                DECLARATION
2  Deposition of: Marc Ho          Date: 10/05/23
3  Regarding:     SVV Technology Innovations vs. Acer Inc.
4  Reporter:    Byrd/Baker
5  _____
6
7  I declare under penalty of perjury the following to
8  be true:
9
10  I have read my deposition and the same is true and
11  accurate save and except for any corrections as made
12  by me on the Correction Page herein.
13
14  Signed at _____, _____
15  on the _____ day of _____, 2023.
16
17
18
19
20
21
22
23
24         Signature_____
25              Marc Ho

NAEGELI
DEPOSITION & TRIAL

(800) 528-3335
NAEGELIUSA.COM

# EXHIBIT F

Redacted in Entirety

# EXHIBIT G

**EXHIBIT A**

**Disputed Terms**

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction | Court's Construction |
|---|---|---|---|
| light harvesting device/element/layer ['318 (claim 14); '397 (claim 12, 13); '306 (claims 13, 14, 40, 41)] [Proposed by Defendants] | Plain and ordinary meaning<br><br>If the Court determines that a construction is required, Plaintiff proposes "[layer for] collecting light for the purpose of converting it to a useful type of energy" | "device/element/layer for collecting light to change it to non-light form" | |
| Whether '318 Patent claim [1][1] preamble is limiting [Proposed by Plaintiff] | '318 Patent claim 1 preamble is not limiting | | |
| "light converting" / "convert . . . light" / "converting light" ['191 (claims 1, 5, 7, 8, 17, 18); '306 (claims 13-15, 26, 40, 41); '999 (claims 1, 3,'205 (claims 1, 20); '795 (claims 1, 16); '135 (claim 10)] [Proposed by Defendants] | Plain and ordinary meaning | "changing light to non-light form" | |
| Whether '999 Patent (claims 1, 3, 5, 6, 7, 10, 11), '088 Patent (claims 1, 3, 7, 8, 10-12, 18-19, 21-22, | Preambles not limiting | | |

[1] Brackets surrounding a claim means the term is referenced in this independent claim, however the independent claim is not asserted, but an asserted dependent claim depends from the claim.

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction | Court's Construction |
|---|---|---|---|
| 24-26), '089 Patent (claims 1, 2, 4-5, 7-10, 12-14, 16-20), '205 Patent (claims [1], 2-5, 11-20), and '795 Patent (claims 1, 9-12, 15-17, 20) preambles are limiting<br><br>[Proposed by Plaintiff] | | | |
| "absorb . . . light" / "absorbing . . . light"<br>['321 (claim 5); '191 (claims 1, 3, 5, 8, 17); '306 (claims 13, 14, 15, 26, 40, 41); '999 (claim 1); '088 (claims 1, 12, 25, 26); '089 (claims 1, 13, 14, 20); '205 (claims 1, 3, 16, 19, 20); '795 (claim 1, 16, 17)]<br><br>[Proposed by Defendants] | Plain and ordinary meaning | "to extinguish light" | |
| "light absorbing layer/material/areas"<br>['321 (claim 5); '089 (claim 20); '306 (claim 15); '191 (claim 1, 3, 18)]<br>"optically absorptive layer"<br>['321 (claims [1], 5); '088 (claim 24)]<br><br>[Proposed by Defendants] | Plain and ordinary meaning | "layer/film/element that extinguishes light | |

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction | Court's Construction |
|---|---|---|---|
| "photoabsorptive [film] layer" ['306 (claims 13, 26, 40); '795 (claims 1, 10, 16)] [Proposed by Defendants] | Plain and ordinary meaning. If the Court determines that a construction is required, "light absorbing layer" | | |
| "photoresponsive layer" / "photoresponsive element" ['999 (claims 1, 3, 5, 7); '088 (claims 1, 7, 10, 21, 22, 24-26); '089 (claims 1, 12, 14, 17, 19); '205 (claims [1], 4, 11-15, 19-20); '135 (claim 9)] [Proposed by Defendants] | Plain and ordinary meaning; if the Court determines that a construction is required, Plaintiff proposes "a layer that responds to light" | "layer that changes light to electricity" | |
| "light input surface" ['318 (claim [1]); '999 (claim 1); '306 (claims 13, 40); '191 (claim 17)] [Proposed by Defendants] | Plain and ordinary meaning; no construction required | "surface that faces and receives light from the light source" | |
| "aperture" ['318 (claim [1]); '321 (claim 17); '342 (claim 1); '089 (claim 16); '306 (claims 1, 20, 24, 27)] [Proposed by Plaintiff] | "a light collecting area, often a hole or opening, or the diameter thereof" NOTE: "a light collecting area" can also be a surface of a cylindrical lens or a light-deflecting microstructure | Plain and ordinary meaning | |
| "aspherical" '089 (claim 16) | "a shape that is not a portion of a sphere" | Plain and ordinary meaning | |

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction | Court's Construction |
|---|---|---|---|
| [Proposed by Plaintiff] | | To the extent a construction is required, the term shall have its plain and ordinary meaning, which is "defining a characteristic that focuses the incident rays onto a single point" | |
| "cavity" / "cavities" '318 (claim 3); '306 (claims 1, 2, 30); '135 (claim 6);'191 (claims 1, 8, 10, 16); '795 (claims 9, 15, 20) [Proposed by Defendants] | Plain and ordinary meaning.  No construction required. | "a feature formed of empty space entirely below the surrounding surface" | |
| "discrete protrusion" '306 (claims 20, 21, 23, 24) [Proposed by Defendants] | Plain and ordinary meaning.  No construction required. | "a feature entirely above the surrounding surface" | |
| "prevailing plane" '318 (claim [1]); '397 (claim 14) [Proposed by Plaintiff] | "the primary or predominant plane" | Plain and ordinary meaning | |
| "corrugated" ['562 (claim 10); '397 (claims [1], 12, 14, 19)] [Proposed by Plaintiff and Defendants] | "shaped into alternating ridges and grooves" | "to shape or contract into parallel grooves and ridges" | |
| "providing first semiconductor | "providing ~~first~~second semiconductor | Indefinite | |

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction | Court's Construction |
|---|---|---|---|
| quantum dots having a second band gap" ['089 (claim 20)] [Proposed by Plaintiff] | quantum dots having a second band gap" (Judicial correction) | | |
| "substantially" ['342 (claim 1); '318 (claims [1]); '089 (claims 1, 14, 20); '135 (claim 1); '321 (claim 5); '205 (claims [1], 19, 20); '999 (claim 1); '088 (claims 1, 3, 25, 26); '795 (claims 1, 17)] [Proposed by Defendants] | Plain and ordinary meaning. No construction required. | Indefinite | |

**Agreed Constructions**

| Claim Term | Agreed Construction |
|---|---|
| "TIR" or "total internal reflection" '318 Patent: (claims [1], 8); '397 Patent: (claim [1]); '342 Patent: (claims 1, 22, 24); '089 Patent: (claims 1, 4, 7, 14); '562 Patent: (claims 1, 14); '135 Patent: (claims 1, 5, 6, 24); '191: (claims 1, 7); '205 Patent: (claims [1], 17, 19, 20); '999 Patent: (claims 1, 6); '088: (claims 3, 11, 26); '306 Patent: (claims 18, 27); '795 Patent: (claims 1, 9, 15, 16, 20) | "the phenomenon that involves the reflection of all the incident light off the boundary between a first medium and a second medium of lower refractive index, when the angle of incidence to the second medium exceeds the critical angle" |
| retroreflect '397 Patent: (claims [1], 19 | "reflecting light so that the paths of the reflected rays are parallel to those of the incident rays" |
| optically coupled '342 Patent: (claim 1); '562 Patent: (claims 1, 14); '135 Patent: (claim 1); '999 Patent: (claim 1) | "providing for transfer of light from one optical component to another" |
| curvilinear [walls] | "consisting of curved lines" |

| Claim Term | Agreed Construction |
|---|---|
| '089 Patent: (claim 7); '795 Patent: (claims 9, 15, 20) | |
| focal plane<br>'342 Patent: (claim 20); '999 Patent: (claim 7); '306 Patent: (claim 1, 20, 33) | "a plane that is perpendicular to the axis of a lens or mirror and passes through the focus" |
| focal area<br>effective focal area<br>'562 Patent: (claim 5); '342 Patent: (claims 6, 10, 23);<br><br>effective focal area: '342 Patent: (claim 23); '191 Patent: (claim 16); '088 Patent: (claim 21) | focal area:  "an area where light rays would converge if a lens is illuminated by a beam of light, and may include areas at a relatively small distance from the "ideal" focus of the lens"<br><br>effective focal area: "the resulting focal area obtained when a given material occupies the space between the lens and the focal plane" |

# EXHIBIT H

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| **SVV TECHNOLOGY INNOVATIONS INC.** | § § § | |
| | § | **Civil Action No. 6:22-cv-00311-ADA** |
| *Plaintiff,* | § | **Civil Action No. 6:22-cv-00312-ADA** |
| | § | **Civil Action No. 6:22-cv-00313-ADA** |
| **v.** | § | |
| | § | **JURY DEMANDED** |
| **ASUSTeK COMPUTER INC.,** | § | |
| | § | |
| *Defendant.* | § | |
| | | |
| **SVV TECHNOLOGY INNOVATIONS INC.** | § § | |
| | § | **Civil Action No. 6:22-cv-00511-ADA** |
| *Plaintiff,* | § | **Civil Action No. 6:22-cv-00512-ADA** |
| | § | **Civil Action No. 6:22-cv-00513-ADA** |
| **v.** | § | |
| | § | **JURY DEMANDED** |
| **MICRO-STAR INTERNATIONAL CO. LTD.,** | § § | |
| *Defendant.* | § | |
| | | |
| **SVV TECHNOLOGY INNOVATIONS INC.** | § § | |
| | § | **Civil Action No. 6:22-cv-00639-ADA** |
| *Plaintiff,* | § | **Civil Action No. 6:22-cv-00640-ADA** |
| | § | **Civil Action No. 6:22-cv-00641-ADA** |
| **v.** | § | |
| | § | **JURY DEMANDED** |
| **ACER INC.,** | § | |
| *Defendants.* | § | |

## <u>CLAIM CONSTRUCTION ORDER</u>

The Court now enters its final constructions for the terms of U.S. Patent Nos. 8,290,318

("the '318 Patent"); 8,740,397 ("the '397 Patent"); 9,678,321 ("the '321 Patent"); 9,880,342

("the '342 Patent"); 10,269,999 ("the '999 Patent"); 10,439,088 ("the '088 Patent"); 10,439,089

("the '089 Patent"); 10,613,306 ("the '306 Patent"); 10,627,562 ("the '562 Patent"); 10,797,191

("the '191 Patent"); 10,838,135 ("the '135 Patent"); 10,868,205 ("the '205 Patent"); 11,276,795

("the '795 Patent") as follows:

**Disputed Terms**

| Claim Term | The Court's Construction |
|---|---|
| light harvesting device/element/layer ['318 (claim 14); '397 (claim 12, 13); '306 (claims 13, 14, 40, 41)] | Plain and ordinary meaning |
| Whether '318 Patent claim [1][1] preamble is limiting | '318 Patent claim [1] preamble is not limiting |
| "light converting" / "convert . . . light" / "converting light" ['191 (claims 1, 5, 7, 8, 17, 18); '306 (claims 13-15, 26, 40, 41); '999 (claims 1, 3);'205 (claims 1, 20); '795 (claims 1, 16); '135 (claim 10)] | Plain and ordinary meaning |
| Whether '999 Patent (claims 1, 3, 5, 6, 7, 10, 11), '088 Patent (claims 1, 3, 7, 8, 10-12, 18-19, 21-22, 24-26), '089 Patent (claims 1, 2, 4-5, 7-10, 12-14, 16-20), '205 Patent (claims [1], 2-5, 11-20), and '795 Patent (claims 1, 9-12, 15-17, 20) preambles are limiting | The '999 Patent (claims 1, 3, 5, 6, 7, 10, 11), '088 Patent (claims 1, 3, 7, 8, 10-12, 18-19, 21-22, 24-26), '089 Patent (claims 1, 2, 4-5, 7-10, 12-14, 16-20), '205 Patent (claims [1], 2-5, 11-20), and '795 Patent (claims 1, 9-12, 15-17, 20) preambles are not limiting |
| "absorb . . . light" / "absorbing . . . light" ['321 (claim 5); '191 (claims 1, 3, 5, 8, 17); '306 (claims 13, 14, 15, 26, 40, 41); '999 (claim 1); '088 (claims 1, 12, 25, 26); '089 (claims 1, 13, 14, 20); '205 (claims 1, 3, 16, 19, 20); '795 (claim 1, 16, 17)] | Plain and ordinary meaning |

---

[1] Brackets surrounding a claim means the term is referenced in this independent claim, however the independent claim is not asserted, but an asserted dependent claim depends from the claim.

| Claim Term | The Court's Construction |
|---|---|
| "light absorbing layer/material/areas" ['321 (claim 5); '089 (claim 20); '306 (claim 15); '191 (claim 1, 3, 18)] "optically absorptive layer" ['321 (claims [1], 5); '088 (claim 24)] | Plain and ordinary meaning |
| "photoabsorptive [film] layer" ['306 (claims 13, 26, 40); '795 (claims 1, 10, 16)] | Plain and ordinary meaning |
| "photoresponsive layer" / "photoresponsive element" ['999 (claims 1, 3, 5, 7); '088 (claims 1, 7, 10, 21, 22, 24-26); '089 (claims 1, 12, 14, 17, 19); '205 (claims [1], 4, 11-15, 19-20); '135 (claim 9)] | Plain and ordinary meaning |
| "light input surface" ['318 (claim [1]); '999 (claim 1); '306 (claims 13, 40); '191 (claim 17)] | Plain and ordinary meaning |
| "aperture" ['318 (claim [1]); '321 (claim 17); '342 (claim 1); '089 (claim 16); '306 (claims 1, 20, 24, 27)] | Plain and ordinary meaning |
| "aspherical" '089 (claim 16) | Plain and ordinary meaning |
| "cavity" / "cavities" '318 (claim 3); '306 (claims 1, 2, 30); '135 (claim 6);'191 (claims 1, 8, 10, 16); '795 (claims 9, 15, 20) | Plain and ordinary meaning |
| "discrete protrusion" '306 (claims 20, 21, 23, 24) | Plain and ordinary meaning |

| Claim Term | The Court's Construction |
|---|---|
| "prevailing plane" <br> '318 (claim [1]); '397 (claim 14) | Plain and ordinary meaning |
| "corrugated" <br> ['562 (claim 10); '397 (claims [1], 12, 14, 19)] | "shaped into alternating ridges and grooves" |
| "providing first semiconductor quantum dots having a second band gap" ['089 (claim 20)] | Indefinite |
| "substantially" <br> ['342 (claim 1); '318 (claims [1]); '089 (claims 1, 14, 20); '135 (claim 1); '321 (claim 5); '205 (claims [1], 19, 20); '999 (claim 1); '088 (claims 1, 3, 25, 26); '795 (claims 1, 17)] | Plain and ordinary meaning |

## Agreed Constructions

| Claim Term | Agreed Construction |
|---|---|
| "TIR" or "total internal reflection" <br> '318 Patent: (claims [1], 8); '397 Patent: (claim [1]); '342 Patent: (claims 1, 22, 24); '089 Patent: (claims 1, 4, 7, 14); '562 Patent: (claims 1, 14); '135 Patent: (claims 1, 5, 6, 24); '191: (claims 1, 7); '205 Patent: (claims [1], 17, 19, 20); '999 Patent: (claims 1, 6); '088: (claims 3, 11, 26); '306 Patent: (claims 18, 27); '795 Patent: (claims 1, 9, 15, 16, 20) | "the phenomenon that involves the reflection of all the incident light off the boundary between a first medium and a second medium of lower refractive index, when the angle of incidence to the second medium exceeds the critical angle" |
| retroreflect <br> '397 Patent: (claims [1], 19 | "reflecting light so that the paths of the reflected rays are parallel to those of the incident rays" |
| optically coupled <br> '342 Patent: (claim 1); '562 Patent: (claims 1, 14); '135 Patent: (claim 1); '999 Patent: (claim 1) | "providing for transfer of light from one optical component to another" |

| Claim Term | Agreed Construction |
|---|---|
| curvilinear [walls]<br>'089 Patent: (claim 7); '795 Patent: (claims 9, 15, 20) | "consisting of curved lines" |
| focal plane<br>'342 Patent: (claim 20); '999 Patent: (claim 7); '306 Patent: (claim 1, 20, 33) | "a plane that is perpendicular to the axis of a lens or mirror and passes through the focus" |
| focal area<br>effective focal area<br>'562 Patent: (claim 5); '342 Patent: (claims 6, 10, 23);<br><br>effective focal area: '342 Patent: (claim 23); '191 Patent: (claim 16); '088 Patent: (claim 21) | focal area: "an area where light rays would converge if a lens is illuminated by a beam of light, and may include areas at a relatively small distance from the "ideal" focus of the lens"<br><br>effective focal area: "the resulting focal area obtained when a given material occupies the space between the lens and the focal plane" |

**SIGNED** this 6th day of April, 2023.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **SVV TECHNOLOGY** | § | |
| **INNOVATIONS INC.** | § | |
| *Plaintiff*, | § | Civil Action No.  **6:22-cv-00639-ADA** |
| | § | Civil Action No.  **6:22-cv-00640-ADA** |
| **v.** | § | Civil Action No.  **6:22-cv-00641-ADA** |
| | § | |
| **ACER INC.** | § | |
| *Defendant*. | § | |
| | § | |

### ORDER GRANTING PLAINTIFF'S MOTIONS *IN LIMINE*

Before the Court is Plaintiff SVV Technology Innovations Inc. ("SVVTI") Motions *In Limine* ("MILs").  After consideration of the MILs, the Court is of the opinion that the MILs should be GRANTED.

The Court GRANTS SVVTI's MIL No. 1 as to any evidence or argument regarding the alleged availability of non-infringing alternatives or design-arounds.

The Court GRANTS SVVTI's MIL No. 2 as to statements that previously rejected constructions are the "plain and ordinary meaning" of terms that the Court has already construed and statements referring to Asserted Patents as "photovoltaic patents" or "solar panel patents."

The Court GRANTS SVVTI's MIL No. 3 as to any argument, evidence, testimony, reference, or suggestion that Defendant practices the prior art; concerning a comparison between an accused instrumentality and a purported prior art patent, device, method, process, product, system, or document; or concerning a comparison between an accused instrumentality and a commercial product, or third parties' products.

The Court GRANTS SVVTI's MIL No. 4 as to any reference to dropped claims, theories, patents, or accused products.

The Court GRANTS SVVTI's MIL No. 5 as to any argument, evidence, testimony, reference, or suggestion that SVVTI has not asserted its patents against other entities, including Defendant's suppliers.

Signed on this _____ day of _____, 2024.

_____
ALAN D ALBRIGHT, UNITED STATES DISTRICT JUDGE